**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 28 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TRINIDAD LUCIO-LUCIO,

Defendant-Appellant.

No. 03-2025

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CR-02-1403 WPJ)**

---

Submitted on the briefs: *

Stephen P. McCue, Federal Public Defender, Steve Sosa, Assistant Federal Public Defender, and Shari Lynn Allison, Research and Writing Specialist, Las Cruces, New Mexico, for Defendant-Appellant.

David C. Iglesias, United States Attorney, and David N. Williams, Assistant United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **TACHA**, Chief Circuit Judge,  **McKAY** and **McCONNELL**, Circuit Judges.

---

*After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**McCONNELL** , Circuit Judge.

In June of 2002, a border patrol agent apprehended Mr. Trinidad Lucio-Lucio for violating the immigration laws. Mr. Lucio-Lucio had been deported twice previously, most recently on May 10, 2002. He subsequently pled guilty to one count of illegally reentering the United States, in violation of 8 U.S.C. § 1326. Because he had a prior conviction in Texas for driving while intoxicated, which had been charged and sentenced as a felony because of earlier DWI offenses, his offense level was subject to some degree of enhancement under U.S.S.G. § 2L1.2(b)(1). Although Mr. Lucio-Lucio urged the trial court to apply only the four-level enhancement for having a past felony conviction, the court ultimately decided to apply the harsher eight-level enhancement reserved for aggravated felonies. It reasoned that this Court's previous decision in *Tapia Garcia v. INS* , 237 F.3d 1216 (10th Cir. 2001), mandated the conclusion that driving while intoxicated is a "crime of violence," and therefore an aggravated felony under the Sentencing Guidelines. Mr. Lucio-Lucio appeals, and we REVERSE.

I

The sentencing guideline that governs this case provides for a range of enhancements depending on the severity of an illegal alien's convictions prior to removal. *See* U.S.S.G. § 2L1.2(b)(1) (2002). An alien previously convicted of an aggravated felony is subject to an eight-level enhancement. *Id.* § 2L1.2(b)(1)(C). The application notes direct the courts to use the definition of "aggravated felony" from 8 U.S.C. § 1101(a)(43). *See* U.S.S.G. § 2L1.2 cmt. n.2. That section lists several types of aggravated felony, among them a "crime of violence (as defined in Section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). 18 U.S.C. § 16 in turn defines a "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Clearly, DWI does not satisfy § 16(a). The question before us, therefore, is whether driving while intoxicated is an offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 16(b).

Despite the Government's insistence to the contrary, this Court has not yet

ruled on that question. In *Tapia Garcia*, a panel of this Court reviewed a decision of the Board of Immigration Appeals under a deferential standard of review; we held only that "the BIA reasonably construed 18 U.S.C. § 16(b) to include an offense for driving under the influence of drugs or alcohol." 237 F.3d at 1222. Deciding that an interpretation is reasonable is not to decide that it is correct. *See Williams v. Taylor*, 529 U.S. 362, 410 (2000). We now proceed to address the issue *de novo*. *See United States v. Saenz-Mendosa*, 287 F.3d 1011, 1013 n.1 (10th Cir. 2002).

## II

According to § 16(b), we are to consider whether driving while intoxicated is a crime that, "by its nature," poses a substantial risk that physical force may be used in the commission of the offense. That phrase signals that we are to use the "categorical approach," under which "a court must only look to the statutory definition, not the underlying circumstances of the crime." *United States v. Reyes-Castro*, 13 F.3d 377, 379 (10th Cir. 1993); *cf. Taylor v. United States*, 495 U.S. 575, 588-89 (1990) (applying this approach in interpreting the Armed Career Criminal Act). The Texas statutes under which Mr. Lucio-Lucio was convicted state that DWI occurs "if the person is intoxicated while operating a motor vehicle in a public place," Tex. Penal Code Ann. § 49.04, and upgrade the offense to a felony when preceded by two or more convictions for any of several similar

-4-

alcohol-related offenses. *Id.* § 49.09. For purposes of this analysis, we take the statutory term "operating a motor vehicle" to refer to the typical case – actual driving. [2]

Every circuit that has considered the issue directly has determined that driving while intoxicated, by itself, is not a "crime of violence" under 18 U.S.C. § 16. *See Dalton v. Ashcroft*, 257 F.3d 200, 205-06 (2d Cir. 2001); *United States v. Chapa-Garza,* 243 F.3d 921, 927 (5th Cir. 2001); *Bazan-Reyes v. INS*, 256 F.3d 600, 612 (7th Cir. 2001); *Montiel-Barraza v. INS*, 275 F.3d 1178 (9th Cir. 2002) (per curiam) (holding that repeat DUI is not a crime of violence). And although this Court has, on deferential review, upheld the BIA's determination that DWI is a crime of violence, *see Tapia Garcia*, 237 F.3d at 1222, the BIA has since bowed to the weight of contrary circuit authority and overruled its previous determination. *In re Ramos*, 23 I. & N. Dec. 336 (BIA 2002).

---

[2]There are unusual scenarios in which one could technically violate the DWI statute without creating the risks normally associated with drunk driving. *See, e.g.*, *Barton v. State*, 882 S.W.2d 456, 459 (Tex. App. 1994) (holding that the defendant could be guilty of DWI if he attempted to drive, even though the vehicle was not in motion). For that reason, the Second Circuit held that a similar DWI offense is not by its nature a crime of violence. *See Dalton v. Ashcroft*, 257 F.3d 200, 205-06 (2d Cir. 2001) (New York DUI is not a crime of violence because it applies to some harmless activity, such as sleeping at the wheel of a car with the engine off). We do not take the phrase "by its nature" as an invitation to search for exceptional cases of this kind. Rather, the proper inquiry is "one that contemplates the risks associated with the proscribed conduct in the mainstream of prosecutions brought under the statute." *Id.* at 209 (Walker, C.J., dissenting).

We agree with our sister circuits and the BIA that to call DWI a crime of violence would stretch the § 16(b) definition too far. In the absence of a clear indication that Congress intended otherwise, we must "read the definition in light of the term to be defined, . . . which calls to mind a tradition of crimes that involve the possibility of more closely related, active violence." *United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 1992); *Bazan-Reyes*, 256 F.3d at 610.

Legislative history confirms that Congress meant its definition to align with the everyday meaning of the term.[3] Section 16(b) was enacted as part of the Comprehensive Crime Control Act of 1984. That statute also included a chapter on bail reform, which required a hearing before someone who had committed a crime of violence or one of various other serious offenses could be released on bail. *See* Pub. L. No. 98-473, sec. 203(a), § 3142(f), 98 Stat. 1976, 1979-80 (1984) (codified as amended at 18 U.S.C. § 3142(f)). Congress included in that chapter a definition of "crime of violence" substantially identical to § 16. *See id.* sec. 203(c), § 3156(a)(4), 98 Stat. at 1985 (codified as amended at 18 U.S.C. § 3156(a)(4)). The Senate Report on the legislation explains that the crimes of violence and other serious crimes that make a hearing mandatory are meant to include "essentially the same categories of offenses described in the District of

---

[3]*See generally* Karen Crawford & Thomas Hutchins, *Ignoring Congress: The Board of Immigration Appeals and Crimes of Violence in* Puente *and* Magallanes, 6 Bender's Im. Bul. 67 (2001).

Columbia Code by the terms 'dangerous crime' and 'crime of violence' for which a detention hearing may be held under that statute." S. Rep. No. 98-225, at 20-21 & n.60, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203-04.

The referenced D.C. Code provisions defined crimes of violence to include the following:

> murder, forcible rape, carnal knowledge of a female under the age of sixteen, taking or attempting to take immoral, improper, or indecent liberties with a child under the age of sixteen years, mayhem, kidnaping, robbery, burglary, voluntary manslaughter, extortion or blackmail accompanied by threats of violence, arson, assault with intent to commit any offense, assault with a dangerous weapon, or an attempt or conspiracy to commit any of the foregoing offenses.

D.C. Code § 23-1331(4) (1981) (most recently amended 2002). Dangerous crimes included taking property by force, certain kinds of burglary, certain kinds of arson, forcible rape, assault with intent to rape, and some drug offenses. *Id.* § 23-1331(3) (most recently amended 2001). Drunk driving did not appear on either list. More significantly, the offenses listed involve far more of an intent to commit violence, or at least a willingness to commit violence if necessary, than the typical DWI offense. [4] To hold DWI to be a crime of violence would frustrate

---

[4]Many states categorize certain crimes as violent ones; like the D.C. Code, they generally limit the category to crimes involving actual or intended violence. *See Doe*, 960 F.2d at 225 (surveying state definitions).

Congress's intent to differentiate among crimes and to apply more severe sanctions to a limited class of especially heinous offenses.

The statutory definition captured that Congressional intent by including only those crimes that pose "a substantial risk that physical force may be used . . . *in the course of committing the offense.* " 18 U.S.C. § 16(b) (emphasis added). For a use of force to be "in the course of committing the offense," we think it must be part of the course of action that the offender commits – and thus it, too, must be actively committed. *See Chapa-Garza*, 243 F.3d at 927 ("section 16(b) refers only to that physical force that may be used to *perpetrate* the offense") (emphasis added); *Ramos*, 23 I. & N. Dec. at 346 (noting that cases have distinguished between crimes that risk violent conduct and those that merely risk harmful consequences by requiring the harm to come about through "action rather than inaction"); *United States v. Gracia-Cantu*, 302 F.3d 308, 312-13 (5th Cir. 2002) (holding that injury to a child is not a crime of violence because "many convictions for this offense involve an omission rather than an intentional use of force"). Usually, this kind of active commission carries a connotation of at least some degree of intent, and we are persuaded that it does so here. *See Bazan-Reyes*, 256 F.3d at 611; *Chapa-Garza*, 243 F.3d at 927. [5]

_____

[5]That the violence be committed intentionally or close to intentionally is a necessary condition, not a sufficient one. Of course, the phrase "in the course of the offense" also suggests that the risked violence must have some nexus to the

(continued...)

According to the legislative history, the paradigmatic offense that falls under § 16(b) is burglary. S. Rep. No. 98-225, at 307, *reprinted in* 1984 U.S.C.C.A.N. at 3486-87. There, what is risked is not just injury, but intentional violence committed by the offender in connection with the same general course of action. The burglar thus risks *committing* an act of violence in connection with the commission of the offense.

By contrast, a drunk driver typically does not mean to cause an accident at all, and can hardly be said to "commit" the resulting violence in the same way that a burglar does. Although the drunk driver recklessly risks harming others, the risk is not that this will happen intentionally (as in burglary). Rather, it is that the impairment of the driver's faculties will result in negligent driving, which in turn will result in an accident. Thus, while burglary and DWI are similar in that they both recklessly risk harm, they differ greatly in the character of the act that immediately causes the harm. A burglar is reckless of the risk of committing an intentional act of violence; a drunk driver is reckless of the risk that he will accidentally cause harm. Whatever the precise degree of intent necessary to separate violent conduct from conduct that leads to harmful

---

[5](...continued)
offense conduct; an offense that increases the likelihood of intentional violence long after the offense conduct is over may still fall outside of the § 16(b) definition. *See United States v. Lane*, 252 F.3d 905, 907 (7th Cir. 2001) (Posner, J.) ("A crime that increases the likelihood of a crime of violence need not itself be a crime of violence.").

consequences, it seems plain that DWI resulting in an accident – which, when it happens, is a purely unintended result – falls into the latter category.  Hence, DWI is not within the ambit of § 16(b).  *See Bazan-Reyes*, 256 F.3d at 611-12 ("§ 16(b) is limited to crimes in which the offender is reckless with respect to the risk that *intentional* physical force will be used in the course of committing the offense.") (emphasis added); *United States v. Trinidad-Aquino*, 259 F.3d 1140, 1145 (9th Cir. 2001) ("[A] defendant cannot commit a 'crime of violence' if he negligently – rather than intentionally or recklessly – hits someone or something with a physical object.").

Without a distinction between crimes that potentially involve violent conduct and crimes that merely involve the possibility of resulting harm, the § 16(b) definition would be far too inclusive; any sufficiently dangerous activity, including extreme speeding, unlawful transportation of hazardous chemicals, or child neglect, might qualify as a crime of violence.  *See Dalton*, 252 F.3d at 207 ("Crimes of gross negligence or reckless endangerment, such as leaving an infant alone near a pool, involve a risk of injury . . . ."); *United States v. Lane*, 252 F.3d 905, 907 (7th Cir. 2001).  As then-Chief Judge Breyer observed in *Doe*, if one focuses on "the risk of direct *future* harm that present conduct poses," then "how could one then exclude, say, drunken driving or unlawful transportation of hazardous chemicals or other risk-creating crimes . . . ?  There is no reason to

believe that Congress meant to enhance sentences based on, say, proof of drunken driving convictions." 960 F.2d at 225. [6]

### III

Our interpretation of §16(b) preserves the distinction between that section and another provision of the Sentencing Guidelines that also refers to crimes of violence. U.S.S.G. § 4B1.2(a)(2) defines the term "crime of violence" as including conduct "that presents a serious potential risk of physical injury to another." In one respect, that is obviously broader than §16(b), which is limited to crimes entailing a "substantial risk that physical force . . . may be used in the course of committing the offense." In *United States v. Farnsworth*, 92 F.3d 1001, 1008-09 (10th Cir. 1996), this Court held that the defendant's prior conviction for "killing a human being while driving under the influence of drugs or alcohol and with gross negligence" satisfied the definition in § 4B1.2(a)(2). *Id.* at 1008. [7] Grossly negligent driving while intoxicated self-evidently posed "a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). But because the risk in the DWI context is not that the injury will occur through the

---

[6]*Doe* involved the definition of "violent felony" that appears in 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.2(a)(2), which in one respect is significantly more broad than the definition in § 16. *See infra* Part III. If courts must be cautious in extending that definition to include conduct that risks future harms, this applies *a fortiori* to the more limited § 16(b) definition.

[7]Unlike the offense in *Farnsworth*, Mr. Lucio-Lucio's prior offense includes neither actual harm to another nor grossly negligent driving among its elements.

commission of acts of force, it cannot be described as posing "a substantial risk that physical force . . . may be used in the course of committing the offense." 18 U.S.C. § 16(b). If we were to follow the Government and conclude that § 16(b) reaches DWI offenses merely because they "involve a significant risk of harm to the person or property of others," Appellee's Br. at 7, we would collapse the distinction between these two differently-worded definitions.

IV

Our decision today is confined to § 16(b) cases in which the statutory offense does not involve actual injury to others. Because we hold that in the DWI context, the possible use of physical force is not committed "in the course of committing the offense," we need not consider whether § 16(a), which does not include this limiting language, contains an implicit intent requirement that keeps it from applying to crimes – such as DWI resulting in death or injury – involving unintentional but actual injury to another. Some courts have reached that conclusion because they hold that any "use" of physical force, which is involved in both § 16(a) and § 16(b), must be intentional. [8] We leave the question

---

[8]*Compare Bazan-Reyes*, 256 F.3d at 609; *United States v. Rutherford*, 54 F.3d 370, 372-73 (7th Cir. 1995); *United States v. Parson*, 955 F.2d 858, 866 (3d Cir. 1992); *Dalton*, 257 F.3d at 206-07; *Chapa-Garza*, 243 F.3d at 926-27 (all construing "use of physical force" to imply an intentionality requirement), *with Trinidad-Aquino*, 259 F.3d at 1146; *Ramos*, 23 I. & N. Dec. at 345 (both holding that the conduct must have been at least reckless), *and with Omar v. INS*, 298 F.3d 710, 720 (8th Cir. 2002); *Le v. United States Att'y Gen.*, 196 F.3d 1352,
(continued...)

-12-

of intentionality under § 16(a) for another day.

V

The Government argues that, even if pure DWI is not "by its nature" a crime of violence, by some alchemy, repeat DWI is. Repeat offenders, the argument goes, have special reason to know of the dangers of DWI, and are therefore particularly reckless when they commit the offense. Therefore, the Government would have us conclude that a violation of Tex. Penal Code § 49.04 may or may not be a crime of violence, depending on whether it is enhanced under § 49.09. Some authority suggests that making an offense's status depend on the presence of enhancing factors in this way would be inconsistent with our categorical approach. *See United States v. Corona-Sanchez*, 291 F.3d 1201, 1208-11 (9th Cir. 2002); *Montiel-Barraza*, 275 F.3d at 1180. We need not decide that question today, though, because we are not convinced that mere recidivism is enough to change DWI into a crime that is "by its nature" violent. *See Dalton*, 257 F.3d at 205-06. It is true that we have remarked that "[o]ne who

[8](...continued)
1353-54 (11th Cir. 1999) (per curiam); *United States v. Santana-Garcia*, No. 98-2234, 2000 WL 491510 at *2-*3 (6th Cir. Apr. 18, 2000) (unpublished) (all rejecting an intentionality requirement in DWI cases resulting in serious injury or death). While we have not ruled on whether § 16(a) has an intentionality requirement, we held in *United States v. Lujan,* 9 F.3d 890, 891-92 (10th Cir. 1993), that manslaughter is a violent felony under a similar provision in 18 U.S.C. § 924(e)(2)(B)(i), even though intentionality was not an element of the manslaughter offense at issue there.

drives a vehicle while under the influence after having been convicted of that offense knows *better than most* that his conduct is not only illegal, but entails a substantial risk of harm to himself and others." *United States v. Tan*, 254 F.3d 1204, 1210 (10th Cir. 2001). But whatever increased awareness of risk accompanies prior convictions, it is not so great that the risked injury becomes more in the nature of intentional conduct than an unintended consequence.

VI

In holding that DWI is not a crime of violence under § 16(b), we by no means mean to minimize the severity of the offense. We understand that drunk driving is an irresponsible and often fatal act. *See Farnsworth*, 92 F.3d at 1008. Our holding today does not reach the question of whether pure DWI is a "crime of violence" under other definitions of the term like the one at issue in *Farnsworth*, or whether DWI actually causing injury or death to another is a crime of violence under § 16(a). Furthermore, it is possible that another DWI statute, one which required sufficiently reckless driving, might proscribe conduct with a sufficient nexus to the force unleashed in an accident to make it a crime of violence even under § 16(b). But the Texas law at issue here did not, and accordingly, we REVERSE the district court's application of the eight-level enhancement, and REMAND for resentencing consistent with this opinion.