**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 14 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ADALBERTO VENEGAS-
ORNELAS,

      Defendant - Appellant.

No. 03-2075

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-02-1851 JP)**

**Submitted on the briefs:**[*]

Stephan P. McCue, Federal Public Defender; Charles A. Harwood, Assistant
Federal Public Defender; and Shari Lynn Allison, Research and Writing
Specialist, Las Cruces, New Mexico, for Defendant-Appellant.

David C. Iglesias, United States Attorney, and Norman Cairns, Assistant United
States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

Before **EBEL, HARTZ,** and **HENRY**, Circuit Judges.

---

    [*]After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case therefore is ordered
submitted without oral argument.

**EBEL**, Circuit Judge.

# I.

## BACKGROUND

On July 18, 2002, Adalberto Venegas-Ornelas ("Defendant") was arrested in New Mexico. Defendant was a Mexican national who had previously been deported after having been convicted in Colorado of first degree trespass, a felony. Defendant pled guilty to one count of violating 8 U.S.C. § 1326. The presentence report (PSR) calculated Defendant's offense level as 10. The PSR recommended a base offense level of 8 pursuant to U.S.S.G. § 2L1.2(a), with an increase of four levels for a prior felony conviction pursuant to § 2L1.2(b)(1)(D) and a reduction of two levels for acceptance of responsibility pursuant to § 3E1.1. Defendant's criminal history category was IV.

The United States objected to the PSR, arguing that Defendant's prior felony conviction was an aggravated felony justifying an eight level increase in his base offense level, instead of the four level increase recommended by the PSR. The district court agreed with the United States and determined that Defendant's base offense level was 13 and his criminal history category was IV, giving him a guideline sentencing range of 24-30 months. The court sentenced him to 24 months in the custody of the Bureau of Prisons.

Defendant appeals his sentence on the ground that his prior Colorado conviction for criminal trespass was not an aggravated felony qualifying him for an increase under U.S.S.G. § 2L1.2(b)(1)(C). For the following reasons, we **AFFIRM** the district court's sentence.

## II.

## DISCUSSION

### A. Standard of Review

We review de novo the determination that a prior offense is an "aggravated felony" under the Sentencing Guidelines. United States v. Saenz-Mendoza, 287 F.3d 1011, 1013 n.1 (10th Cir. 2002); United States v. Martinez-Villalva, 232 F.3d 1329, 1332 (10th Cir. 2000).

### B. Sentencing Guideline and Statutory Overview

The Sentencing Guideline at issue in this case, U.S.S.G. § 2L1.2(b)(1) (2002), provides for enhancements based on the nature of an illegal alien's convictions prior to removal. If an alien was previously convicted of an "aggravated felony," he or she is subject to an eight-level enhancement. § 2L1.2(b)(1)(C). The commentary to this guideline directs the courts to use the definition of "aggravated felony" given in 8 U.S.C. § 1101(a)(43). See U.S.S.G. § 2L1.2 cmt. 2. Section 1101(a)(43)(F) provides that one type of aggravated felony is a "crime of violence (as defined in Section 16 of Title 18, but not

including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C § 1101(a)(43)(F). 18 U.S.C. § 16 defines "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Because the United States only argues that § 16(b) applies in this case, we limit our discussion to that subsection. In applying § 16(b), we are to consider whether a crime, "by its nature," poses a substantial risk that physical force may be used in the commission of the offense. United States v. Lucio-Lucio, __ F.3d __, 2003 WL 22436260, *2 (10th Cir. 2003).

In this determination, "a court must only look to the statutory definition, not the underlying circumstances of the crime." United States v. Reyes-Castro, 13 F.3d 377, 379 (10th Cir. 1993). Cf. Taylor v. United States, 495 U.S. 575, 588-89 (1990) (applying this categorical approach in interpreting the Armed Career Criminal Act). Although we may not consider the particular facts surrounding the conviction, if the statute reaches different types of conduct, we may look to the charging paper and judgment of conviction in order to "determine if the actual offense the defendant was convicted of qualifies as a crime of violence." Sareang

<u>Ye v. INS</u>, 214 F.3d 1128, 1133 (9th Cir. 2000).[1] <u>Cf.</u> <u>United States v. Zamora</u>, 222 F.3d 756, 764 (10th Cir. 2000) (utilizing same categorical approach in career offender context, but explaining that "if ambiguity exists under the statute we can look beyond the statute to certain records of the prior proceeding, such as the charging documents, the judgment, any plea thereto, and findings by the court").

"Force," as used in the definition of a "crime of violence," is "synonymous with destructive or violent force." <u>United States v. Landeros-Gonzales</u>, 262 F.3d 424, 426 (5th Cir. 2001) (quoting <u>United States v. Rodriguez-Guzman</u>, 56 F.3d 18, 20 n. 8 (5th Cir. 1995); <u>see also</u> <u>Lucio-Lucio</u>, 2003 WL 22436260, at *2

---

[1]This is not inconsistent with <u>McCann v. Rosquist</u>, 185 F.3d 1113, 1117-19 (10th Cir. 1999), *vacated on other grds.*, 529 U.S. 1126 (2000), where we held that the "Taylor exception" to the categorical approach did not apply to a § 16(b) analysis. In <u>McCann</u>, we reversed the district court's analysis of § 16(b) because it examined the particular *facts* of the prior conviction when it should have looked only to the *statute*. The prior conviction in <u>McCann</u> was for forcible sexual abuse, a Utah crime that contained no ambiguity regarding the conduct it reached and that provided the same elements for any conduct prohibited therein. However, the Colorado statute in the instant case is ambiguous on its face because it reaches different types of conduct under different sets of elements. Before we can analyze whether the elements of the statute categorically meet § 16(b), we must parse its nuances in order to determine which elements apply. In situations like this, we look to the charging document for the limited purpose of discerning which portion of the statute to examine on its face. This was not the issue addressed by the court in <u>McCann</u>. In contrast to <u>McCann</u>, here we are not looking at the underlying *facts* of the charged crime; rather we are looking to the charging documents to determine what part of the statute was charged against Defendant. We then determine whether that statutory offense constitutes a crime of violence. We thus believe that <u>McCann</u> poses no conflict to our disposition of the case at hand.

(explaining that § 16(b) calls to mind "active violence") (quotation omitted);

Bazan-Reyes v. INS, 256 F.3d 600, 611 (7th Cir. 2001) ("[W]e found the term

'physical force' in 18 U.S.C. § 16(b) refers to actual violent force.").

**C.      Is a Colorado conviction of first degree criminal trespass of a dwelling an "aggravated felony" under U.S.S.G. § 2L1.2(b)(1)(C)?**

Defendant in the instant case was previously convicted of first degree

criminal trespass under Colo. Rev. Stat. Ann. § 18-4-502, which provides:

> A person commits the crime of first degree criminal trespass if such person knowingly and unlawfully enters or remains in the dwelling of another or if such person enters any motor vehicle with intent to commit a crime therein.  First degree criminal trespass is a class 5 felony.

Because this statute reaches two different types of conduct by governing both

entry or remaining in an automobile and entry or remaining in a dwelling, we can

look to Defendant's charging papers to discern which section he was convicted

under.  See Sareang Ye, 214 F.3d at 1133.  Defendant was charged with unlawful

entry or remaining in a dwelling, and we thus focus on that section of the statute.

The Colorado Court of Appeals has clarified that the "intent to commit a crime

therein" language of the statute "establishes an element of criminal trespass of a

motor vehicle and not an element of criminal trespass of a dwelling."  People v.

Rodriguez, 43 P.3d 641, 643 (Colo. App. 2002).  Therefore, the elements of

Defendant's prior conviction are that he (1) knowingly, (2) unlawfully, (3)

entered or remained (4) in the dwelling of another.  Our task in the current appeal

- 6 -

is to decide whether this offense, from the face of these elements, is an "aggravated felony" under U.S.S.G. § 2L1.2(b)(1)(C), or in other words, whether there is a substantial risk that a defendant will use physical force in committing the elements of this crime.

The Fifth Circuit has addressed this precise question and has held that Colorado criminal trespass is indeed an aggravated felony under § 2L1.2(b)(1)(C). United States v. Delgado-Enriquez, 188 F.3d 592, 595 (5th Cir. 1999). The court noted that "a substantial risk requires a strong probability that the event, in this case the application of physical force during the commission of the crime, will occur." Id. at 595 (quotations omitted). Because "[e]ntering or remaining in the dwelling of another creates a substantial risk that physical force will be used against the residents [or property] in the dwelling," the court concluded that criminal trespass is a crime of violence. Id. We find this persuasive and adopt the Fifth Circuit's reasoning in finding that Colorado first degree criminal trespass is a "crime of violence" and thus an "aggravated felony" under U.S.S.G. § 2L1.2(b)(1)(C).

Defendant argues that a later Fifth Circuit case erased the precedential value of Delgado-Enriquez by changing its approach to "crime of violence" determinations under the Sentencing Guidelines. In United States v. Chapa-Garza, 243 F.3d 921 (5th Cir. 2001), the court held that convictions for driving

while intoxicated (DWI) are not "crimes of violence" because although there is a substantial risk that injury will result, there is not a substantial risk that "the defendant will intentionally employ force against the person or property of another in order to effectuate the commission of the offense." Id. at 927. Defendant argues that this changes the Delgado-Enriquez court's analysis by adding that the use of force must be "intentional" and by focusing on the risk of force used to carry out the offense itself, rather than the risk of force "resulting" from the offense. However, Delgado-Enriquez and Chapa-Garza are not inconsistent.

The Chapa-Garza court was correct in instructing courts not to focus on the risk that force may result as an effect of the crime's commission. Chapa-Garza, 243 F.3d at 925, 927. See also Lucio-Lucio, 2003 WL 22436260, at *4 (cautioning against investigating whether the crime "merely involve[s] the possibility of resulting harm" in applying § 16(b)); see also Jobson v. Ashcroft, 326 F.3d 367, 373 (2d Cir. 2003) ("The risk of serious physical injury concerns the likely effect of the defendant's conduct, but the risk in § 16(b) concerns the defendant's likely use of violent force as a means to an end."). Instead, we examine whether there is a high probability that physical force may be used "in

the course of committing the offense."[2] <u>Reyes-Castro</u>, 13 F.3d at 379. For example, a DUI only involves the risk of resulting physical injury, not the risk of the use of force in the actual commission of drunk driving. <u>See</u> <u>Lucio-Lucio</u>, 2003 WL 22436260, at *3-4. Nothing in <u>Delgado-Enriquez</u> contradicts this "course of commission" approach, and the court in fact stated that it was utilizing this test in its § 16(b) analysis. <u>See</u> <u>Delgado-Enriquez</u>, 188 F.3d at 595.

The <u>Chapa-Garza</u> court is also correct that we look at whether the risk of force involves the risk of intentional, rather than accidental, physical force. <u>Chapa-Garza</u>, 243 F.3d at 927. "For a use of force to be 'in the course of committing the offense,' we think it must be part of the course of action that the offender commits - and thus it, too, must be actively committed . . . with at least some degree of intent[.]" <u>Lucio-Lucio</u>,2003 WL 22436260, at *3 (finding DUI

---

[2]This distinction between "risk of *resulting* physical injury" and "risk of physical force in the *commission* of the crime" illustrates the impropriety of importing analogies from the "career offender" guideline context into the "aggravated felony" guideline context here. Because the career offender guideline, § 4B1.2(a)(2), requires that there be a substantial risk of resulting physical injury, this is significantly different from the §16(b) standard described above. Therefore, we decline the government's invitation to analogize to our § 4B1.2 cases. <u>See</u> <u>Lucio-Lucio</u>, 2003 WL 22436260, at * 4 (explaining that § 4B1.2 is "obviously broader than § 16(b)" and stating, "If we were to follow the Government in concluding that § 16(b) reaches DWI offenses merely because they involve a significant risk of harm to the person or property of others, we would collapse the distinction between these two differently-worded definitions"); <u>Bazan-Reyes</u>, 256 F.3d at 610-11 (describing the differences between the two guideline definitions and explaining that the difference "counsels against interpreting § 16(b) to be equivalent to section 4B1.2").

conviction to lack requisite intent in the use of force); see also Jobson, 326 F.3d at 373 ("§ 16(b) contemplates only intentional conduct and refers only to those offenses in which there is a substantial likelihood that the perpetrator will intentionally employ physical force.") (quotations omitted). Delgado-Enriquez does not contradict this approach as the court did not rely on the risk of accidental force in a home trespass. In fact, another Fifth Circuit case that post-dated both Chapa-Garza and Delgado-Enriquez clarified that Delgado-Enriquez held that criminal trespassing was a crime of violence because it "poses a substantial risk that force will be used to enter the dwelling and subdue the occupants." Landeros-Gonzales, 262 F.3d at 427. This concern is clearly regarding a risk of the use of *intentional* force.

Therefore, Delgado-Enriquez was not weakened by Chapa-Garza, as both cases consistently apply the following test for the application of §16(b): Is there a substantial risk that the defendant will intentionally use force in the commission of the crime? This is the same test that we utilized in Lucio-Lucio, 2003 WL 22436260, at *2-3. We agree with the Fifth Circuit in Delgado-Enriquez that there is a substantial risk that a defendant will intentionally use physical force in completing the crime of criminal trespass in a dwelling, whether the defendant entered the dwelling unlawfully or remained there unlawfully.

Even a case cited by Defendant supports this analysis. In <u>Sareang Ye</u>, 214 F.3d at 1134, although the Ninth Circuit found that vehicle burglary was not a "crime of violence," it explicitly distinguished its case from one that involved residential burglary: "[T]he interiors of vehicles are generally visible from the outside, and there is little risk that a thief will stumble upon an unexpected occupant[.]" Although a residential burglary conviction clearly requires specific intent while residential trespass does not, we do not find substantially lessened risk of force inherent in a residential trespass. A defendant will often encounter resistance either from occupants or structural barriers in "entering or remaining" in someone's dwelling unlawfully, regardless of the defendant's intent in being there. Therefore, there is still a substantial risk that a defendant will need to use force against people or property to either gain entry or remain in a dwelling unlawfully.

In conclusion, Defendant's prior Colorado residential trespass conviction is a "crime of violence" under § 16(b), and thus an "aggravated felony" under U.S.S.G. § 2L1.2(b)(1)(C). Accordingly, we **AFFIRM** the district court's sentencing decision.