# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3055

_____

United States of America,      *
                                 *

         Appellee,     *

                                   *    Appeal from the United States

     v.                             *    District Court for the

                                   *    Western District of Missouri.

Kevin N. Thomas,     *

                                   *

         Appellant.     *

_____

Submitted: January 8, 2007
Filed: April 20, 2007

_____

Before WOLLMAN, BEAM, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Following a bench trial, Kevin Thomas was convicted of being a felon in possession of a firearm, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and of one count of possessing a firearm with an obliterated serial number, a violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). The district court[1] sentenced Thomas to 120 months' imprisonment for the felon in possession charge and 48 months' imprisonment for possessing a firearm with an obliterated serial number and ordered

_____

[1] The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

that these sentences run consecutively.  Thomas appeals from his convictions and sentence, raising four issues.  We affirm.

# I.

On May 10, 2005, an intoxicated Thomas went to the home of Jenny Quick in search of Quick's boyfriend, Kirk Steinbach.  Not finding Steinbach at Quick's residence, Thomas left.  Quick then found Steinbach and told him that Thomas had been at her home.  Shortly thereafter, while Quick, Steinbach, and their children were driving back to Quick's home, they saw Thomas's van outside a store.  They pulled into the parking lot and attempted to park alongside the van, but Thomas moved his van and positioned it so that the headlights were shining into the passenger side of their car (the side on which Steinbach was seated).  Steinbach stuck his head out of the car and indicated that he wanted to talk with Thomas.  Reaching outside his van, Thomas cocked and pointed a small firearm at Quick's car.  Quick sped away, driving to her home.

Once they arrived at Quick's home, Steinbach brought the children into the storm cellar and called the police while Quick waited outside to watch for Thomas, who arrived at Quick's residence shortly thereafter.  Quick spoke with Thomas and spotted a shotgun lodged between the two front seats of the van.  Steinbach joined Quick and Thomas outside, and a verbal confrontation ensued between the two men.  At some point during this incident, Thomas remarked that he "had two guns" and that he "was going to kill [Steinbach]."  The encounter continued to escalate, whereupon Steinbach retrieved his own firearm from the house.  Thomas then returned to his van and drove away.

Minutes later, Thomas drove by the house a couple of times, eventually returning to threaten Steinbach further.  Thomas then left, but returned once more ten to fifteen minutes later, alighted from his van, and began yelling and hitting the van

with his fist. At this point, the police arrived, whereupon Thomas jumped into his van and drove off, with a police vehicle in pursuit. Thomas stopped the vehicle shortly thereafter and was arrested. When the arresting officer looked into the van, he spotted a pistol lying on the front passenger side seat. When he entered the van, he also saw a shotgun, the serial number of which had been obliterated, lying on the floorboard between the driver's and front passenger's seats.

## II.

Thomas claims first that the evidence was insufficient to prove that he possessed either the handgun or the shotgun. We review the sufficiency of the evidence supporting a conviction *de novo*, viewing the "evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003). From the recitation of the facts set forth above, it is clear that there was sufficient evidence to support the conclusion that Thomas possessed the handgun.

The evidence also sufficed to establish that Thomas constructively possessed the shotgun. In addition to his statement to Steinbach that he possessed two firearms, Thomas, as the driver and sole occupant of the van in which the shotgun was found, was clearly in constructive possession of the shotgun, which was within his reach. See United States v. Tindall, 455 F.3d 885, 887 (8th Cir. 2006) (affirming conviction for felon in possession of a firearm where there was evidence, *inter alia*, that the defendant was the driver and sole occupant of the vehicle in which the firearm was found and that the firearm was accessible from the driver's seat), *cert. denied*, 127 S. Ct. 1028 (2007); United States v. Heibert, 30 F.3d 1005, 1008-09 (8th Cir. 1994) (affirming firearm conviction where the firearm had been found in the vehicle that the defendant had driven to work).

Thomas contends next that the district court erred in finding that his 1991 Missouri state conviction for tampering in the first degree, which he acknowledges was based on his unlawful operation of a motor vehicle without the owner's consent, was a crime of violence as defined by United States Sentencing Guidelines (U.S.S.G.) § 4B1.2.[2]  Thomas argues that, unlike theft of a motor vehicle, which we have held constitutes a crime of violence, United States v. Sun Bear, 307 F.3d 747, 752-53 (8th Cir. 2002), tampering in the form of unlawful operation of a motor vehicle without the owner's consent does not inherently "present[] a serious risk of physical injury to [an]other." (Appellant's Br. at 21).  This argument fails in light of our decisions that unlawful operation of a motor vehicle in violation of Missouri law constitutes a crime of violence for purposes of § 4B1.2.  United States v. Clemmons, 461 F.3d 1057, 1062 (8th Cir. 2006) (citing United States v. Bockes, 447 F.3d 1090, 1092-93 (8th Cir. 2006)); United States v. Johnson, 417 F.3d 990, 999 (8th Cir. 2005), *cert. denied*, 127 S. Ct. 285 (2006).

Thomas also argues that the district court erred in finding that he possessed a firearm in connection with another felony offense.  We disagree.  "If the defendant used or possessed any firearm or ammunition in connection with another felony offense," the offense-level will be increased by four levels.  U.S.S.G. § 2K2.1(b)(5).  The district court concluded that a four-level enhancement was appropriate because Thomas possessed a firearm in connection with the unlawful use of a firearm, a felony under Missouri law that can support a § 2K2.1(b)(5) enhancement.  See United States v. Gollhofer, 412 F.3d 953, 955-56 (8th Cir. 2005) (affirming § 2K2.1(b)(5) enhancement based on unlawful use of a firearm in violation of Missouri law), *cert. denied*, 126 S. Ct. 506 (2005).  Under Missouri law, a person is guilty of the unlawful

---

[2]Section 2K2.1 provides that for offenses involving the unlawful possession of firearms, the base offense level will be 24 if the offense occurred subsequent to two felony convictions for crimes of violence.  U.S.S.G. § 2K2.1(a)(2)(2005).  Under § 4B1.2, crimes of violence include offenses that involve conduct which "presents a serious potential risk of physical injury to another." § 4B1.2(a)(2).

use of a firearm if that person "[e]xhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner." Mo. Rev. Stat. § 571.030.1(4). The district court reasonably determined that brandishing a firearm and cocking it in the presence of Quick, Steinbach, and their children was a threatening exhibition of a firearm, in violation of the Missouri law. We thus find no error in the imposition of the § 2K2.1(b)(5) enhancement.

Finally, Thomas argues that his sentence is unreasonable. We disagree. The district court calculated an advisory guidelines range of 168 to 210 months and then considered the factors set forth in 18 U.S.C. § 3553(a), including the seriousness of the offense, the need to protect the public, and the need to avoid unwarranted sentencing disparities. The district court then imposed a total sentence of 168 months' imprisonment, a sentence at the low end of the guidelines range. We cannot say that this sentence is unreasonable.

Nor do we discern any error in the decision to order that the second sentence be consecutive to the first. The "total punishment" imposed by the district court was 168 months' imprisonment. See United States v. Ervasti, 201 F.3d 1029, 1045-46 (8th Cir. 2000) (The "'total punishment' is the precise sentence determined by the sentencing judge from within the appropriate guidelines range"). If the district court had imposed concurrent sentences, the resulting sentence would have been 120 months' imprisonment, the maximum on the felon in possession charge, 18 U.S.C. § 924(a)(2). Section § 5G1.2 provides that if "the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d) (2005).

The judgment is affirmed.

_____

-5-