FILED
United States Court of Appeals
Tenth Circuit

September 6, 2007

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSE LUIS SANCHEZ-GARCIA,

Defendant-Appellant.

No. 06-2262

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CR-06-929-JC)**

---

Terri J. Abernathy, Assistant United States Attorney (David C. Iglesias, United States Attorney, with her on the brief), Las Cruces, NM, for Plaintiff-Appellee.

James N. Langell, Assistant Federal Public Defender, Las Cruces, NM, for Defendant-Appellant.

---

Before **KELLY**, **ANDERSON**, and **HENRY**, Circuit Judges.

---

**HENRY**, Circuit Judge.

---

We are asked to decide whether unlawful use of means of transportation ("UUMT"), as defined in Ariz. Rev. Stat. § 13-1803(A)(1), is a "crime of violence" under 18 U.S.C. § 16(b). We conclude it is not. Accordingly,

exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we reverse the district court's imposition of an eight-level "aggravated felony" enhancement under United States Sentencing Guidelines ("USSG") § 2L1.2(b)(1)(C), vacate the defendant's sentence, and remand for re-sentencing.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

In May 2005, Jose Luis Sanchez-Garcia pleaded guilty in Arizona state court to UUMT in violation of Ariz. Rev. Stat. § 13-1803(A)(1), a class 5 felony. Under Ariz. Rev. Stat. § 13-1803(A)(1), "[a] person commits [UUMT] if, without intent permanently to deprive, the person . . . [k]nowingly takes unauthorized control over another person's means of transportation." Mr. Sanchez-Garcia was sentenced to one-and-a-half years' imprisonment and removed to Mexico on February 24, 2006. Less than five weeks later, on March 28, 2006, he was arrested in Luna County, New Mexico for illegally reentering the United States. He subsequently pleaded guilty to illegal reentry after deportation in violation of 8 U.S.C. § 1326(a) and (b)(2).

### B. STATUTORY BACKGROUND

For a violation of 8 U.S.C. § 1326, USSG § 2L1.2(b)(1)(C) provides that the defendant's offense level should be enhanced by eight levels if the violation followed a conviction for an "aggravated felony." For purposes of USSG § 2L1.2(b)(1)(C), "aggravated felony" is defined in the various subsections of 8

-2-

U.S.C. § 1101(a)(43).  See USSG § 2L1.2, cmt. n.3(A).  The only subsection of this statute relevant here defines an aggravated felony as "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year."  8 U.S.C. § 1101(a)(43)(F).[1]  Section 16, in turn, defines a "crime of violence" as

> (a)  an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b)  any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

## C.  PRESENTENCE INVESTIGATION REPORT

Citing USSG § 2L1.2(b)(1)(C), Mr. Sanchez-Garcia's presentence investigation report ("PSR") characterized UUMT as an aggravated felony and recommended an eight-level enhancement to Mr. Sanchez-Garcia's base offense level of eight.  After a three-level reduction for acceptance of responsibility, Mr. Sanchez-Garcia's total offense level was thirteen.  With a criminal history category of IV, his suggested sentencing range was twenty-four to thirty months.

---

[1]  Another subsection of 8 U.S.C. § 1101(a)(43) provides that a "theft offense" is also an aggravated felony.  See 8 U.S.C. § 1101(a)(43)(G).  While the Ninth Circuit has held that UUMT, as defined in Ariz. Rev. Stat. § 13-1803, does *not* constitute a "theft offense," see United States v. Perez-Corona, 295 F.3d 996, 1001 (9th Cir. 2002), this question is not before us and we therefore express no view on it.

## D. Sentencing

Mr. Sanchez-Garcia objected to the eight-level enhancement, arguing that UUMT is not an aggravated felony because it does not fall within § 16's alternative definitions of a crime of violence. The district court disagreed and adopted the PSR's factual findings and Guideline calculations. It then sentenced Mr. Sanchez-Garcia to twenty-four months' imprisonment followed by two years' supervised release. This timely appeal followed.

## II. DISCUSSION

On appeal, the parties agree that UUMT does not qualify as a crime of violence under § 16(a) because Ariz. Rev. Stat. § 13-1803(A)(1) does not have as an element the use, attempted use, or threatened use of force. There is also no dispute that UUMT is a felony punishable by more than one year of imprisonment. Thus, the sole issue is whether UUMT, as defined in Ariz. Rev. Stat. § 13-1803(A)(1), falls within § 16(b) as a crime "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b).

## A. Standard of Review

We review de novo the legal question of whether a prior offense constitutes a crime of violence under §16(b) and thus justifies an aggravated felony enhancement under USSG § 2L1.2(b)(1)(C). See United States v. Treto-Martinez, 421 F.3d 1156, 1157-58 (10th Cir. 2005), cert. denied, 126 U.S. 1089 (2006).

## B. THE CATEGORICAL APPROACH

To determine whether a prior offense is a "crime of violence" under §

16(b), we apply the categorical approach outlined in Taylor v. United States, 495

U.S. 575, 588-89 (1990). See United States v. Venegas-Ornelas, 348 F.3d 1273,

1275 (10th Cir. 2003). Under this approach, we examine only the elements of

the statute of conviction and disregard the specific factual circumstances

underlying the defendant's prior offense. United States v. Lucio-Lucio, 347 F.3d

1202, 1204 (10th Cir. 2003); United States v. Reyes-Castro, 13 F.3d 377, 379

(10th Cir. 1993). Accordingly, for a prior offense to be a crime of violence

under § 16(b), the "substantial risk" of "physical force" must inhere in the

elements of the prior offense rather than from the specific conduct in which the

defendant engaged. See United States v. Frias-Trujillo, 9 F.3d 875, 877 (10th

Cir. 1993) ("There is no indication that Congress intended that a particular crime

might sometimes count towards enhancement and sometimes not, depending on

the facts of the case.") (internal quotation marks omitted).

While we are prohibited from examining "the underlying *facts* of the

charged crime," we may take into account certain records of the prior conviction,

such as the charging document and comparable judicial records, if the statutory

definition of the prior offense is "ambiguous on its face because it reaches

different types of conduct under different sets of elements." Venegas-Ornelas,

348 F.3d at 1275 n.1 (emphasis in original). This examination does not involve

"a subjective inquiry as to whether [the] particular factual circumstances [underlying the conviction] involve a risk of violence." McCann v. Rosquist, 185 F.3d 1113, 1117 n.4 (10th Cir. 1999), vacated on other grounds, 529 U.S. 1126 (2000); see United States v. Rodriguez, 979 F.2d 138, 141 (8th Cir. 1992) ("[T]he term 'by its nature' in [§ 16(b)] would be rendered superfluous if the sentencing courts were saddled with the task of examining each individual offense committed to determine whether it actually involved substantial risk of physical force."). Rather, we simply examine these documents to determine which "part of the statute was charged against the [d]efendant" and, thus, "which portion of the statute to examine on its face." Venegas-Ornelas, 348 F.3d at 1275 n.1.

## B. ANALYSIS

As set forth above, Ariz. Rev. Stat. § 13-1803(A)(1) provides that a person commits felony UUMT when "[a] person . . ., without intent permanently to deprive . . . [k]nowingly takes unauthorized control over another's means of transportation." To establish UUMT, the State of Arizona need only prove that a defendant "(1) knowingly t[ook] control; (2) without authority; . . . (3) of another person's means of transportation. The phrase 'without intent to permanently deprive' . . . does not describe an element of the crime which the state must prove." State v. Kamai, 911 P.2d 626, 630 (Ariz. Ct. App. 1995).

Because Ariz. Rev. Stat. § 13-1803(A)(1) does not reach different types of

conduct under different sets of elements, there is no need to examine any records relating to Mr. Sanchez-Garcia's UUMT conviction. Cf. Venegas-Ornelas, 348 F.3d at 1276 (examining judicial records of the defendant's prior conviction for first degree criminal trespass when the statute of conviction expressly covered a person who "'knowingly and unlawfully enters or remains in the dwelling of another *or* . . . enters any motor vehicle with intent to commit a crime therein'") (quoting Colo. Rev. Stat. Ann. § 18-4-502) (emphasis added)). Under the categorical approach, then, the critical question is whether knowingly taking unauthorized control over another's means of transportation is an offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing [it]." 18 U.S.C. § 16(b).

To answer this question, we start with the plain language of § 16(b), which "simply covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense." Leocal v. Ashcroft, 543 U.S. 1, 10 (2004). In interpreting § 16(b), we have stated that the "'use of force' language implies that some intentional availment of force is required before an offense rises to the level of a crime of violence." United States v. Moore, 420 F.3d 1218, 1223 (10th Cir. 2005) (some internal quotation marks omitted). We also have provided that the term "force" refers to "destructive or violent force," Venegas-Ornelas, 348 F.3d at 1275 (internal

-7-

quotation marks omitted), and that the term "substantial risk" requires a "high probability" that such force may be employed, id. at 1277.  In addition, the phrase "in the course of committing the offense" focuses our inquiry on "the risk of force used to carry out the offense itself, rather than the risk of force resulting from the offense." Id. at 1276 (internal quotation marks omitted).  In other words, § 16(b) is not concerned with the possibility of an accident or other potential effects of a perpetrator's conduct, but with the probability that the perpetrator may use violent force to accomplish the criminal objective.  See Leocal, 543 U.S. at 10 n.7 ("The 'substantial risk' in 16(b) relates to the use of force, not to the possible effect of a person's conduct.").

Applying these principles to Ariz. Rev. Stat. § 13-1803(A)(1), Mr. Sanchez-Garcia contends that UUMT does not fall within § 16(b) because its statutory elements encompass inherently nonviolent conduct, such as borrowing a vehicle with the owner's permission and failing to return it on time.  In response, the government concedes that UUMT can be committed in nonviolent ways, but maintains a substantial risk exists that intentional violent force may "be used . . . as a means to gain unauthorized control of the vehicle." Aple's Br. at 8.  In support of this argument, the government directs our attention to United States v. Galvan-Rodriguez, 169 F.3d 217 (5th Cir. 1999).  There, the Fifth Circuit concluded that the Texas offense of unauthorized use of a motor vehicle, a similar offense to UUMT, *does* constitute a crime of violence under § 16(b), in

part, because the crime "carries a substantial risk that the vehicle might be broken into, 'stripped,' or vandalized."[2]  169 F.3d at 219.

Like any offense involving the unauthorized taking of property, it is clear there is *some* chance that destructive or violent force might be employed in the commission of UUMT when a person initially takes unauthorized control over a means of transportation.  For instance, one might gain access to another person's locked vehicle by breaking a window.  Or, similar to when a person enters a dwelling without permission, violent force might be used in a direct confrontation with an occupant of the vehicle or a third-party intervenor.  See Leocal, 543 U.S. at 10 (stating that generic burglary, by its nature, carries a substantial risk that violent force will be used against a person); Venegas-Ornelas, 348 F.3d at 1278 (holding that first degree criminal trespass involving the unauthorized entry into a dwelling, as defined by Colorado law, by its nature, carries a substantial risk that violent force will be used against a person or property).

---

[2]  The government also cites United States v. Thomas, 484 F.3d 542 (8th Cir. 2007), and United States v. Lindquist, 421 F.3d 751 (8th Cir. 2006), cert. denied, 127 S. Ct. 2094 (2007).  These cases, however, involve the question of whether offenses involving the unauthorized operation of a motor vehicle qualify as "crimes of violence" under USSG § 4B1.2, not § 16(b).  As both the Supreme Court and this court have previously observed, the definitions of crime of violence in §16(b) and § 4B1.2 are distinguishable because the former concerns a risk of force whereas the latter concerns a risk of *resulting* injury.  See Leocal, 543 U.S. at 10 n.7; Venegas-Ornelas, 348 F.3d at 1277 n.2.  The broader scope of § 4B1.2 renders cases like Thomas and Lindquist inapplicable here.

In the case of UUMT, however, we cannot say these risks are "substantial." Indeed, we think there is a relatively low probability of destructive or violent force being employed to gain initial control over a vehicle in the commission of UMMT because Ariz. Rev. Stat. § 13-1803(A)(1) encompasses a broad range of conduct that does not present *any* risk of such force being used. For instance, Ariz. Rev. Stat. § 13-1803(A)(1)'s terms prohibit a person from driving a rental vehicle past the expiration of a rental agreement, borrowing a car he or she knows is stolen, and surreptitiously taking a friend's keys and going "joyriding." Moreover, even if a vehicle is broken into, it is less likely force will be used against a person during the commission of UUMT than in residential burglary or trespass because "the interiors of vehicles are generally visible from the outside, and there is little risk that a thief will stumble upon an unexpected occupant once he or she gains entry to the car." Sareang Ye v. I.N.S., 214 F.3d 1128, 1134 (9th Cir. 2000) (holding that vehicle burglary is not a crime of violence under § 16(b)).

In reaching this conclusion, we are mindful that "the proper inquiry is one that contemplates the risks associated with the proscribed conduct in the mainstream of prosecutions brought under the statute." Lucio-Lucio, 347 F.3d at 1204 n.2 (internal quotation marks omitted); see James v. United States, 127 S. Ct. 1586, 1597 (2007) (applying the categorical approach to determine whether attempted burglary falls within the Armed Career Criminal Act and stating that

-10-

"the proper inquiry is whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of injury to another" (emphasis added)).  Notably, in the instant case, the only Arizona state cases cited by the parties involved prosecutions under Ariz. Rev. Stat. § 13-1803(A)(1) for conduct that presented *no* risk of destructive or violent force.  For example, in State v. Griest, 994 P.2d 1028 (Ariz. Ct. App. 2000), an individual who originally had permission to use a vehicle committed UUMT when he "put the [vehicle] to a use the owner did not intend, and for period of time that exceeded the owner's permission."  994 P.2d at 1029.  See also Kamai, 911 P.2d at 630 (evidence that defendant "took . . . [a] truck for longer than his employer authorized" supported UUMT charge).  That Ariz. Rev. Stat. § 13-1803(A)(1) subsumes and has been used to prosecute this kind of conduct further demonstrates that a high probability of the use of destructive or violent force does not inhere in its statutory elements.

That the Fifth Circuit reached the opposite decision in this evolving area of law regarding the Texas offense of unauthorized use of a motor vehicle in Galvan-Rodriguez does not persuade us otherwise.  As an initial matter, this case has been harshly criticized within the Fifth Circuit.  See United States v. Charles, 275 F.3d 468, 470 (5th Cir. 2001) (Sparks, J., concurring) (stating that "Galvan-Rodriguez . . . [is] simply wrongly decided" and lamenting that "most traffic violations have been elevated to crimes of violence in the Fifth Circuit"

-11-

(internal quotation marks omitted)). Moreover, the Galvan-Rodriguez court cited no authority and offered little explanation for its blanket statement that the risk of a vehicle being "broken into, 'stripped,' and vandalized" is indeed substantial. 169 F.3d at 219. Furthermore, in rejecting the defendant's argument that the Texas statute encompassed too much nonviolent conduct to present a substantial risk of violent force, the Fifth Circuit relied on the "strong probability" that an unauthorized driver might "be involved in or will cause a traffic accident" or attempt "to evade the authorities by precipitating a high-speed car chase and thereby risk[] the lives of others, not to mention significant damage to the vehicle and other property." Id. at 219-20. This rationale has subsequently been rejected by the Supreme Court. See Leocal, 543 U.S. at 11 ("Interpreting § 16 to encompass accidental or negligent conduct would blur the distinction between the 'violent' crimes Congress sought to distinguish for heightened punishment and other crimes."); id. at 10 n.7 ("The 'substantial risk' in § 16(b) relates to the use of force, not to the possible effect of a person's conduct."); see also Lucio-Lucio, 347 F.3d at 1206 ("Without a distinction between crimes that potentially involve violent conduct and crimes that merely involve the possibility of resulting harm, the § 16(b) definition would be far too inclusive; any sufficiently dangerous activity, including extreme speeding, unlawful transportation of hazardous chemicals, or child neglect, might qualify as a crime of violence."). We therefore decline to follow the Fifth Circuit's decision.

Our conclusion that UUMT does not fall within the ambit of § 16(b) is buttressed by the "ordinary meaning" of the term "crime of violence," which "suggests a category of violent, active crimes," Leocal, 543 U.S. at 11, as well as a review of § 16(b)'s legislative history. As we explained in Lucio-Lucio, the types of crimes Congress intended to be covered by § 16(b) are, at bottom, "the same categories of offenses described in the District Columbia Code by the terms 'dangerous crime' and 'crime of violence . . . .'" 347 F.3d at 1205 (quoting S. Rep. No. 98-225, at 20-21 & n.60, reprinted in 1984 U.S.C.C.A.N. 3182, 3203-04). The offenses listed include murder, rape, robbery, assorted burglary crimes, assault with a dangerous weapon, and taking property by force. Id. (citing D.C. Code § 23-1331(3), (4) (1981)). UUMT and similar offenses are not listed. More importantly, logic and common sense indicate that Congress did not intend to punish a person who was dilatory in returning a borrowed car or went joyriding in the same manner as a convicted murderer, rapist, robber, or burglar.

## III. CONCLUSION

For the foregoing reasons, we conclude that UUMT, as defined in Ariz. Rev. Stat. § 13-1803(A)(1), is not a "crime of violence" under § 16(b). We therefore REVERSE the district court's imposition of the eight-level aggravated felony enhancement under USSG § 2L1.2(b)(1)(C), VACATE Mr. Sanchez-Garcia's sentence, and REMAND for re-sentencing consistent with this opinion.