**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 16, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

FELIPE ROMERO-HERNANDEZ,

Defendant - Appellant.

No. 05-2154

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NEW MEXICO**
**(D. Ct. No. CR-04-2490 WPJ)**

---

Submitted on the briefs:[*]

Jerry A. Walz and Alfred D. Creecy, Walz and Associates, Cedar Crest, New Mexico, for the Defendant-Appellant.

David C. Iglesias, United States Attorney, and Norman Cairns, Assistant United States Attorney, Office of the United States Attorney for the District of New Mexico, Albuquerque, New Mexico, for the Plaintiff-Appellee.

---

Before **TACHA**, Chief Circuit Judge, **BRISCOE**, and **GORSUCH**, Circuit Judges.

---

[*]After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**TACHA**, Chief Circuit Judge.

Defendant-Appellant Felipe Romero-Hernandez, a citizen of Mexico, pleaded guilty to illegal reentry following removal for commission of an aggravated felony in violation of 8 U.S.C. § 1326(a) and (b)(2). At sentencing, the District Court applied a sixteen-level upward adjustment to Mr. Romero-Hernandez's sentence under § 2L1.2(b)(1)(A)(ii) of the U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines") after concluding that he had previously been deported following a felony conviction for a crime of violence. On appeal, Mr. Romero-Hernandez argues that the District Court erroneously applied the adjustment because his prior state conviction is not a crime of violence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and AFFIRM.

## I. BACKGROUND

On March 10, 2004, in Denver County Court, Mr. Romero-Hernandez pleaded guilty to and was convicted of misdemeanor unlawful sexual contact in violation of Colorado law, Colo. Rev. Stat. § 18-3-404(1). Mr. Romero-Hernandez was sentenced to 720 days' imprisonment with 60 days' credit for time served and 660 days suspended and was thereafter removed from the United States. On August 14, 2004, Mr. Romero-Hernandez was apprehended in southern New Mexico and was subsequently charged with illegal reentry

following removal for commission of an aggravated felony, a violation of 8 U.S.C. § 1326(a) and (b)(2).

Mr. Romero-Hernandez pleaded guilty to the federal charge. The presentence report ("PSR") calculated his base offense level as eight pursuant to U.S.S.G. § 2L1.2(a). In addition, the PSR recommended a sixteen-level upward adjustment under U.S.S.G. § 2L1.2(b)(1)(A)(ii), which provides for an increase to the base offense level when the defendant has a prior felony conviction for a crime of violence. According to the PSR, Mr. Romero-Hernandez's conviction is a felony for federal sentencing purposes (despite its characterization as a misdemeanor under Colorado law) because it is punishable by a term of imprisonment exceeding one year, *see* U.S.S.G. § 2L1.2 cmt. n.2, and is a "crime of violence" because Mr. Romero-Hernandez had non-consensual sexual contact with a minor and "sexual abuse of a minor" is an enumerated crime of violence under the Guidelines, *see* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).[1] The PSR also

---

[1]The PSR describes the offense conduct as follows:
Offense documentation reflects the victim[,] who was [15] years old at the time, told her father of the defendant's inappropriate sexual behavior. . . . The victim advised the defendant went into her room while she was sleeping and he attempted to grab her breasts as he reached under her shirt. The victim stated she pushed the defendant's hands away while telling him to stop and leave her alone. The victim related the defendant was telling her to touch him and rubbed her outer thigh with his hand. The victim reported the defendant tried to get into bed with the victim and again put his hand in the victim's shirt, grabbing her breast while stating "those mine." The victim advised she then told the defendant "no they're mine!"

(continued...)

recommended a three-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.  Applying these adjustments, the PSR reported an adjusted offense level of 21.  With a criminal history category of III, the recommended Guidelines sentence was 46 to 57 months' imprisonment.  *See* U.S.S.G. ch. 5 pt. A.

Mr. Romero-Hernandez objected to the PSR, arguing that his prior state conviction was neither a felony nor a crime of violence.  The District Court rejected these objections, concluding that the offense was a felony and that a "plain reading" of the Colorado statute reveals that a violation of the statute constitutes a "forcible sex offense," an offense specifically enumerated as a "crime of violence" under the Guidelines, *see* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).  The District Court sentenced Mr. Romero-Hernandez to 46 months' imprisonment to be followed by two years' supervised release.  On appeal, Mr. Romero-Hernandez does not contest that the state conviction is a felony offense for purposes of the Guidelines.  He maintains, however, that the offense of unlawful sexual contact is not a "crime of violence."

## II.  DISCUSSION

This Court reviews de novo a district court's determination that a prior offense qualifies as a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii).

---

[1](...continued)
and pushed him away again.

-4-

*See United States v. Torres-Ruiz*, 387 F.3d 1179, 1180–81 (10th Cir. 2004).  "In interpreting a guideline, we look at the language in the guideline itself, as well as the interpretative and explanatory commentary to the guideline provided by the Sentencing Commission."  *Id.* at 1181 (quotation omitted).

The 2004 Guidelines, under which the District Court sentenced Mr. Romero-Hernandez, provide a sixteen-level upward adjustment to the base offense level if the "defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence."  U.S.S.G. § 2L1.2(b)(1)(A)(ii).  The application notes to § 2L1.2 define "crime of violence" as:

> any of the following: murder, manslaughter, kidnapping, aggravated assault, *forcible sex offenses*, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (emphasis added).

When a defendant contests whether a prior conviction is a crime of violence, the sentencing court is generally required to follow the "categorical approach" as adopted in *Taylor v. United States*, 495 U.S. 575, 600 (1990).  *United States v. Perez-Vargas*, 414 F.3d 1282, 1284 (10th Cir. 2005).  The categorical approach requires the sentencing court to look "only to the statutory definitions of the prior offenses, and not to the particular facts underlying those

convictions." *Id.* (quotation omitted). But when an examination of the statute reveals that the statute "reaches a broad range of conduct, some of which merits an enhancement and some of which does not, courts resolve the resulting ambiguity by consulting reliable judicial records." *United States v. Martinez-Hernandez*, 422 F.3d 1084, 1086 (10th Cir. 2005). At this stage, the analysis is referred to as the "modified categorical approach." *See Gonzales v. Duenas-Alvarez*, – U.S. –, 127 S.Ct. 815, 819 (2007); *Batrez Gradiz v. Gonzales*, 490 F.3d 1206, 1211 (10th Cir. 2007). In applying the modified categorical approach, the court is limited to examining "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). The court may also rely on any admissions the defendant has made regarding the facts of the prior conviction. *Perez-Vargas*, 414 F.3d at 1285. Ultimately, the purpose of this analysis is to avoid "collateral trials." *Shepard*, 544 U.S. at 23.

Following the categorical approach here, we look first to the language of the statute to determine whether Mr. Romero-Hernandez was convicted of a crime of violence. Because we conclude that the particular section of the Colorado statute at issue prohibits conduct that is categorically a crime of violence under § 2L1.2, our analysis ends with the language of the statute and we do not proceed

to apply the modified categorical approach.

Mr. Romero-Hernandez was convicted under Colo. Rev. Stat. § 18-3-404(1),[2] which provides:

> Any actor who knowingly subjects a victim to any sexual contact commits unlawful sexual contact if:
> (a) The actor knows that the victim does not consent; or
> (b) The actor knows that the victim is incapable of appraising the nature of the victim's conduct; or
> (c) The victim is physically helpless and the actor knows that the victim is physically helpless and the victim has not consented; or
> (d) The actor has substantially impaired the victim's power to appraise or control the victim's conduct by employing, without the victim's consent, any drug, intoxicant, or other means for the purpose of causing submission; or
> [(e) Repealed by Laws 1990, H.B.90-1133, § 25, eff. July 1, 1990.]
> (f) The victim is in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over the victim and uses this position of authority, unless incident to a lawful search, to coerce the victim to submit; or
> (g) The actor engages in treatment or examination of a victim for other than bona fide medical purposes or in a manner substantially inconsistent with reasonable medical practices.

The District Court concluded that a conviction under the Colorado statute is categorically a "forcible sex offense" and thus a crime of violence. The statute prohibits nonconsensual sexual contact that is not necessarily achieved by

---

[2] We may look to the criminal complaint at this stage only to narrow the state offense we examine under the categorical approach. *See Taylor*, 495 U.S. at 602 (requiring courts, under the categorical approach, "to look only to the fact of conviction and the statutory definition of the prior offense"); *see also United States v. Remoi*, 404 F.3d 789, 793 (3d Cir. 2005) (explaining that "[e]ven under the categorical approach, we have been willing to consider charging documents in refining the state offense [that] we examine").

physical force.[3]  We must therefore determine whether nonconsensual sexual contact constitutes a forcible sex offense and therefore a crime of violence.  As we explain below, we conclude that it does.

The Guidelines do not define the phrase "forcible sex offenses."  Mr. Romero-Hernandez argues that to qualify as a forcible sex offense the offense must involve the use of *physical* force apart from the force inherent in the sexual contact itself, while the Government contends that a sex offense can be "forcible" even though no physical force is involved.  According to the Government, a sex offense is "forcible" if it is nonconsensual, including those situations in which the victim is legally or medically unable to consent.  This is an issue of first impression for this Circuit, and other circuits appear to be split on the issue. *Compare United States v. Beltran-Munguia*, 489 F.3d 1042, 1051 (9th Cir. 2007) (noting that, "[n]ot surprisingly, given its language, we have interpreted the phrase 'forcible sex offenses' as requiring the use of force," and force "must

---

[3]A conviction under § 18-3-404(1) does not require the use of physical force against the victim apart from the force inherent in the unlawful contact itself.  Section 18-3-404 provides two separate penalty provisions.  Generally, unlawful sexual contact is a "class 1 misdemeanor," Colo. Rev. Stat. § 18-3-404(2)(a), punishable by up to two years' imprisonment, *id.* § 18-1.3-501(1), (3)(a), (3)(b)(II)(a), unless the accused "compels the victim to submit by use of . . . [physical] force, intimidation, or threat," in which case the crime is a "class 4 felony," *id.* §§ 18-3-404(2)(b), 18-3-402(a)–(c), punishable by two to eight years' imprisonment, *id.* §§ 18-1.3-406, 18-1.3-401(10), 18-1.3-401(a)(V)(A).  Because the penalty depends on whether physical force, threats, or intimidation were used to accomplish the sexual contact, it is clear that a person can be convicted under the statute without a showing of physical force, threats, or intimidation.

actually be violent in nature"), *and United States v. Gomez-Gomez*, — F.3d —, 2007 WL 2070276, at *3 (5th Cir. 2007) (collecting Fifth Circuit cases discussing § 2L1.2's "forcible sex offenses" enhancement and explaining that, for those cases to which the enhancement did not apply, "the act may well be against the will of the victim . . . but [if] there is no force or threat of force, . . . it is not a 'forcible sex offense' under the Guidelines"), *with United States v. Remoi*, 404 F.3d 789, 794–95 (3d Cir. 2005) (rejecting an interpretation of § 2L1.2 limiting "forcible sex offenses" to those offenses involving physical force and concluding that a sex offense against a victim who is "physically helpless, mentally defective or mentally incapacitated" is categorically a "forcible sex offense").

Because the Guidelines do not define the term "forcible sex offense," we look to the "ordinary, contemporary, and common" meanings of the words used. *Perrin v. United States*, 444 U.S. 37, 42 (1979); *see also United States v. Bolanos-Hernandez*, 492 F.3d 1140, 1144 (9th Cir. 2007); *United States v. Mungia-Portillo*, 484 F.3d 813, 816 (5th Cir. 2007). A "sex offense" is commonly understood as "[a]n offense involving unlawful sexual conduct." Black's Law Dictionary 1112 (8th ed. 2004) (defining "sexual offense"); *see also Bolanos-Hernandez*, 492 F.3d at 1144 (applying dictionary definition of "sexual offense"). Section 18-3-404(1) proscribes "unlawful sexual contact."[4] The full

_____

[4]Colorado law defines "sexual contact" as:

-9-

range of conduct prohibited by § 18-3-404(1) is thus a "sex offense" as that term is commonly understood.

The more difficult question is whether the full range of conduct prohibited by § 18-3-404(1) is a *forcible* sex offense. *Black's* generally defines "forcible" as "[e]ffected by force or threat of force *against opposition or resistance*." Black's Law Dictionary 674 (8th ed. 2004) (emphasis added). This rather circular definition could be read to imply that the word "forcible" requires physical compulsion sufficient to overcome "opposition or resistance." Such a reading would be incorrect for two reasons. First, as *Black's* explains in the context of a personal trespass, unlawful contact with another person is a *forcible* injury: "To lay one's finger on another person without lawful justification is as much a forcible injury in the eye of the law . . . as to beat him with a stick." Black's Law Dictionary 674 (8th ed. 2004). Thus, the inclusion of "opposition or resistance" should not be read to require active opposition or resistance. A legal right to be free from interference will suffice to satisfy this definition.

Second, the word "force" does not necessarily connote the use of physical

---

[4](...continued)
[T]he knowing touching of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or the knowing touching of the clothing covering the immediate area of the victim's or actor's intimate parts if that sexual contact is for the purposes of sexual arousal, gratification, or abuse.

Colo. Rev. Stat. § 18-3-401(4).

-10-

compulsion. *Black's* defines force as "[p]ower, violence, or pressure directed against a person or thing." Black's Law Dictionary 673 (8th ed. 2004). "Power" is in turn defined as "[d]ominance, control, or influence." Black's Law Dictionary 1207 (8th ed. 2004). These definitions omit any reference to physical power, pressure, dominance, or control. This omission is consistent with how we have defined "force" in similar contexts. For example, we have stated that "force may be inferred by such facts as disparity in size between victim and assailant, or disparity in coercive power." *United States v. Holly*, 488 F.3d 1298, 1302 (quotation and citation omitted) (10th Cir. 2007) (holding that in the context of aggravated sexual assault, force does not mean "the brute force [commonly] associated with rape"). These facts do not get at the issue of physical compulsion, but rather go to the disparity of influence. Thus, where one party has sufficient control of a situation to overcome the another's free will, force is present.

The language of the crime-of-violence definition, § 2L1.2 cmt. n.1(B)(iii), also indicates that use of physical compulsion is not required for a sex offense to be "forcible." The application note specifically uses the word "physical" to modify force in denoting an offense committed by means of physical compulsion. *See* § 2L1.2 cmt. n.1(B)(iii) (defining crime of violence to include any offense that "has as an element the use, attempted use, or threatened use of *physical* force against the person of another" (emphasis added)). The Sentencing Commission's

-11-

omission of the "physical" modifier from the term "forcible sex offense" indicates that the word "forcible" must mean more than physical compulsion. This conclusion is bolstered by the fact that there are other enumerated offenses that do not necessarily involve physical compulsion, permitting an inference that physical compulsion is not necessary for a crime to be a crime of violence generally. For example, the list of specifically enumerated crimes of violence include statutory rape and sexual abuse of a minor, neither of which requires physical compulsion. *See Remoi*, 404 F.3d at 795 (noting that sexual abuse of a minor is a crime that involves exploitation, but not necessarily physical compulsion). Thus, a sex offense may be committed by means that do not involve "physical" force, yet the offense may still be "forcible."

Though we have determined that a "forcible" sex offense need not be accomplished by means of physical compulsion, the question remains whether nonconsensual sexual contact, such as that prohibited by the Colorado statute, is necessarily "forcible." When an offense involves sexual contact with another person, it is necessarily forcible when that person does not consent. *See Remoi*, 404 F.3d at 796 ("If a 'forcible' sexual offense is not associated with physical compulsion, it must therefore mean a sexual act that is committed against the victim's will or consent."). In the instant case, this conclusion is reinforced by reference to the specifically enumerated situations that are covered by the statute in question: victims unable to comprehend the nature of their conduct; physically

-12-

helpless victims; victims whose self-control is impaired through the perpetrator's actions; or victims who are in the power of the perpetrator for medical purposes or pursuant to some legal or disciplinary authority. Colo. Rev. Stat. § 18-3-404(1)(b)–(d), (f)–(g). These examples are all ones in which the victims' situational lack of power, influence, or control renders them unable to give consent. Read with these examples in mind, subsection (a), which requires merely that the perpetrator know that the victim did not consent, *id.*, should be read to cover an analogous situation: where, due to disparities in power or influence, the victim's lack of consent and the perpetrator's knowledge of this lack of consent is insufficient to protect the victim. Like the more specific examples discussed in the later subsections, such situations clearly fall under the definition of "force" discussed in *Holly*, 488 F.3d at 1302.

Because, as noted *supra*, the use of such disparities in situational power or influence meet the definition of force, the offense in question is categorically a crime of violence, and the District Court did not err by applying the § 2L1.2 enhancement to Mr. Romero-Hernandez's sentence.

### III. CONCLUSION

For the foregoing reason, we **AFFIRM** the sentence imposed by the District Court.