FILED
United States Court of Appeals
Tenth Circuit

May 20, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 07-8039

STEVEN DANIEL HAYS,

Defendant-Appellant.

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 06-CR-230-CAB)**

David E. Johnson, Assistant Federal Public Defender, Denver, Colorado (Raymond P. Moore, Federal Public Defender, and Robert R. Rogers, Assistant Federal Public Defender, Cheyenne, Wyoming; and Vicki-Mandell-King, Assistant Federal Public Defender, Denver, Colorado, with him on the briefs), for Defendant-Appellant.

David A. Kubichek, Assistant United States Attorney (John R. Green, Acting United States Attorney, District of Wyoming, with him on the briefs), Casper, Wyoming, for Plaintiff-Appellee.

Before **McCONNELL**, **SEYMOUR**, and **EBEL**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

On September 22, 2006, Steven Daniel Hays was indicted under 18 U.S.C. §§ 922(g)(9) and 924(a)(2) for possession of a firearm after having been convicted of a misdemeanor crime of domestic violence. His prosecution was predicated on a prior conviction under Wyoming's "simple assault; battery" statute. WYO. STAT. ANN. § 6-2-501(b). Mr. Hays filed a motion to dismiss the indictment, contending that the underlying conviction was not a crime of domestic violence as defined by federal law. When the district court denied the motion, Mr. Hays conditionally pled guilty, reserving his right to appeal. He was sentenced to 18 months in prison and 3 years of supervised release. On appeal, he contends the district court erred in denying his motion. We agree and reverse.

## I.

On March 27, 2003, Mr. Hays was issued a misdemeanor citation for violating Wyoming law. The citation stated, in part, that "[t]he defendant did unlawfully commit the following offenses against the peace and dignity of the State of Wyoming, County of Fremont[:] Battery– Under Domestic Violence Act in violation of W.S. 6-2-501." Rec., vol. I, doc. 15 at Def. Exh. A. Neither the citation nor the subsequent judgment in the case described the factual circumstances that led to this conviction. *Id.* at Def. Exh. B.

On September 22, 2006, Mr. Hays was federally indicted under §§ 922(g)(9) and 924 (a)(2) for possession of a firearm after having been previously convicted of a misdemeanor crime of domestic violence. A "misdemeanor crime

-2-

of domestic violence" is defined as an offense that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon . . . ." 18 U.S.C. § 921(a)(33)(A). Under the Wyoming statute at issue here, however, a person may be convicted of simple battery "if he unlawfully touches another in a rude, insolent or angry manner or intentionally, knowingly or recklessly causes bodily injury to another." WYO. STAT. ANN. § 6-2-501(b). Mr. Hays contends that mere touching is not the type of "physical force" contemplated by the federal statute, and that his predicate conviction is therefore inadequate to support the charge in the indictment.

The district court denied Mr. Hays' motion to dismiss the indictment, concluding that

> a person cannot make physical contact of a 'rude, angry, or insolent' nature without some level of physical force. Therefore, under the plain meaning rule, the 'unlawful [] touch[ing] of another in a rude, insolent or angry manner' made illegal by the Wyoming battery statute satisfies the 'physical force' requirement of § 921(a)(33)(A)(ii), which is to be applied to § 922(g)(9).

Rec., vol. I, doc. 22, at 10 (citation omitted). Mr. Hays appeals this determination.[1]

---

[1] Relying on our decision in *United States v. Perez-Vargas*, 914 F.3d 1282 (10th Cir. 2005), Mr. Hays also contends the district court committed plain error in failing to find *sua sponte* that the second prong of the Wyoming battery statute does not meet the "physical force" requirement of 18 U.S.C. § 922(g)(9). Because we conclude that the first prong of the Wyoming battery statute does not satisfy the federal definition of a "crime of domestic violence" and that we cannot determine under which prong the defendant was convicted, we do not need to

(continued...)

**II.**

We must decide whether Wyoming's battery statute satisfies the "use of physical force" element required by § 921(a)(33)(A)(ii)'s definition of a misdemeanor crime of domestic violence. We review this question of statutory interpretation *de novo*. *United States v. Vigil*, 334 F.3d 1215, 1218 (10th Cir. 2003).

In cases like this one, where the relevant federal statute refers to the "elements" of the underlying state conviction, we apply a "categorical approach" when assessing the nature of the prior conviction. *See United States v. Romero-Hernandez*, 505 F.3d 1082, 1085 (10th Cir. 2007); *United States v. Martinez-Hernandez*, 422 F.3d 1084, 1086-87 (10th Cir. 2005). Under the categorical approach, we "are limited to examining the statutory elements of the [prior] crime . . . ." *United States v. Zamora*, 222 F.3d 756, 764 (10th Cir. 2000) (internal quotations and citations omitted).

> Even the categorical approach, however, permits courts to look beyond the statute of conviction under certain circumstances. When the underlying statute reaches a broad range of conduct, some of which merits an enhancement and some of which does not, courts resolve the resulting ambiguity by consulting reliable judicial records, such as the charging document, plea agreement, or plea colloquy.

*Martinez-Hernandez*, 422 F.3d at 1086. *See also Romero-Hernandez*, 505 F.3d at

---

[1](...continued)
reach this issue.

1086; *United States v. Perez-Vargas*, 414 F.3d 1282, 1284 (10th Cir. 2005).  Such review does not involve a subjective inquiry into the facts of the case, but rather its purpose is to determine "which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face." *United States v. Sanchez-Garcia*, 501 F.3d 1208, 1211 (10th Cir. 2007) (internal quotation and citation omitted).

In applying the categorical approach to this case, we begin by looking at the text of the federal statute.  *Leocal v. Ashcroft*, 543 U.S. 1, 8 (2004) ("Our analysis begins with the language of the statute."); *Sanchez-Garcia*, 501 F.3d at 1212 ("To answer this question, we start with the plain language of § 16(b) . . . ."); *McGraw v. Barnhart*, 450 F.3d 493, 498 (10th Cir. 2006) (same).  Mr. Hays was convicted under 18 U.S.C. § 922(g)(9) which states:

> It shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor *crime of domestic violence*, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

*Id.* (emphasis added).  Section 921(a)(33)(A), in turn, states that the term "misdemeanor crime of domestic violence" means an offense that:

> (i) is a misdemeanor under Federal, State, or Tribal law; *and*
> (ii) *has, as an element, the use or attempted use of physical force,* or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent,

or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim[.]

*Id.* (emphasis added). This appeal turns on the interpretation of the term "physical force."

Our "primary task" in interpreting statutes "is to determine congressional intent using traditional tools of statutory interpretation." *N.M. Cattle Growers Ass'n v. U.S. Fish and Wildlife Serv.*, 248 F.3d 1277, 1281 (10th Cir. 2001) (internal quotations and citations omitted). Because neither § 922(g)(9) nor § 921(a)(33)(A) defines the term "physical force," "we look to the 'ordinary, contemporary, and common' meanings of the words used." *Romero-Hernandez*, 505 F.3d at 1087 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

Black's Law Dictionary defines "force" as "[p]ower, violence, or pressure directed against a person or thing," and "physical force" as "[f]orce consisting in a physical act, esp. a violent act directed against a robbery victim." BLACK'S LAW DICTIONARY (8th Ed. 2004). Consistent with these definitions, the Supreme Court and both this circuit and others have suggested that "physical force" means more than mere physical contact; that some degree of power or violence must be present in that contact to constitute "physical force."

In *Leocal*, for example, the Supreme Court was charged with determining whether a prior conviction under Florida law for "driving under the influence of alcohol (DUI) and causing serious bodily injury" constituted a "crime of

-6-

violence" within the meaning of 18 U.S.C. § 16. 543 U.S. 1, 4. Section 16 defines "crime of violence" to mean:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The Court commented that "[i]n construing both parts of § 16, we cannot forget that we ultimately are determining the meaning of a 'crime of violence.'" *Id.* at 11. Significantly for our purpose, the Court then said, "[t]he ordinary meaning of this term, combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of *violent, active crimes* that cannot be said naturally to include DUI offenses." *Id.* (emphasis added).

Similarly, in *Flores v. Ashcroft*, 350 F.3d 666 (7th Cir. 2003), the Seventh Circuit, interpreting the term "physical force" in 18 U.S.C. § 16(a), observed:

> Every battery entails a touch, and it is impossible to touch someone without applying *some* force, if only a smidgeon. Does it follow that every battery comes within § 16(a)? No, it does not. Every battery involves 'force' in the sense of physics or engineering, where 'force' means the acceleration of mass. A dyne is the amount of force needed to accelerate one gram of mass by one centimeter per second per second. That's a tiny amount; a paper airplane conveys more. (A newton, the amount of force needed to accelerate a kilogram by one meter per second per second, is 100,000 dynes, and a good punch packs a passel of newtons.) Perhaps one could read the word 'force' in § 16(a) to mean one dyne or more, but that would make hash of the effort to distinguish ordinary crimes from violent ones . . . . To

-7-

avoid collapsing the distinction between violent and non-violent offenses, we must treat the word 'force' as having a meaning in the legal community that differs from its meaning in the physics community. The way to do this is to insist that the force be violent in nature – the sort that is intended to cause bodily injury, or at a minimum likely to do so.

350 F.3d at 672. In *United States v. Belless*, 338 F.3d 1063, 1067-68 (9th Cir. 2003), the Ninth Circuit construed § 921(a)(3), the statute we are concerned with here, to require more than mere touching:

Any touching constitutes 'physical force' in the sense of Newtonian mechanics. Mass is accelerated, and atoms are displaced. Our purpose in this statutory construction exercise, though, is to assign criminal responsibility, not to do physics. As a matter of law, we hold that the physical force to which the federal statute refers is not *de minimis*.

In our own interpretation of § 16(b) in *Sanchez-Garcia*, 501 F.3d at 1212, we noted "[w]e also have provided that the term 'force' refers to 'destructive or violent force.'" (quoting *United States v. Venegas-Ornelas*, 348 F.3d 1273, 1275 (10th Cir. 2003)). In dicta in *United States v. Treto-Martinez*, 421 F.3d 1156, 1159 (10th Cir. 2005), we suggested that "not all physical contact performed in a rude, insulting or angry manner would rise to the level of physical force."

The Wyoming statute under which Mr. Hays was convicted states that "[a] person is guilty of battery if he *unlawfully touches another in a rude, insolent or angry manner* or intentionally, knowingly or recklessly causes bodily injury to another." WYO. STAT. ANN. § 6-2-501(b) (emphasis added). The record does not indicate which prong of the statute Mr. Hays violated: the "unlawfully touching"

-8-

prong or the "recklessly causes bodily injury prong." Indeed, the only document in the record containing any information about the circumstances of Mr. Hays' underlying conviction is the presentence report in the present case, which is not one of the documents that this court may examine to resolve this ambiguity. *See Shepard v. United States*, 544 U.S. 13, 26 (2005). Thus, either *both* prongs of the Wyoming statute must satisfy the federal definition of a "crime of domestic violence," including its "physical force" component, or Mr. Hays' conviction under the Wyoming statute cannot support the charge in his federal indictment. We begin by analyzing the first prong.

The first prong of the Wyoming statute, forbidding "rude, insolent or angry" touching, follows the common-law rule. *See Flores*, 350 F.3d at 669 (recognizing that a similar Indiana statute followed the common-law rule of battery); *State v. Rand*, 161 A.2d 852, 853 (Me. 1960) (finding that a Maine statute forbidding "attempts to strike, hit, touch or do any violence to another however small, in a wanton, willful, angry or insulting manner . . . ." was "declaratory of the common law"); *State v. Maier*, 99 A.2d 21, 24 (N.J. 1953) (quoting 1 Hawkins, Pleas of the Crown, 134 as stating, "It seems that any injury whatsoever, be it never so small, being actually done to the person of a man, in an angry, or revengeful, or rude, or insolent manner, as by spitting in his face, or any way touching him in anger, or violently justling him out of the way, are batteries in the eye of the law."). Under this common law approach to battery, "any

contact, however slight, may constitute battery." *Flores*, 350 F.3d at 669  Indeed,

as one court has observed, the type of offenses that can "fall within the ambit of

[the common law] crime vary widely and may include kissing without consent,

touching or tapping, jostling, and throwing water . . . or at the other of the end of

the spectrum may include a fatal shooting or stabbing of the victim." *Epps v.

State*, 634 A.2d 20, 23 (Md. 1993).[2]

Accordingly, we conclude that the first prong of the Wyoming battery

statute does not categorically satisfy the definition of "misdemeanor crime of

domestic violence" found in § 921(a)(33)(A) because it "embraces conduct that

does not include 'use or attempted use of physical force.'"  *Belless*, 338 F.3d at

1067.  Indeed, one can think of any number of "touchings" that might be

considered "rude" or "insolent" in a domestic setting but would not rise to the

level of physical force discussed above.  For example, in the midst of an

argument, a wife might angrily point her finger at her husband and he, in

response, might swat it away with his hand.  This touch might very well be

considered "rude" or "insolent" in the context of a vehement verbal argument, but

_____

[2]More recently, many states have moved away from the broad common law
definition.  "The modern approach, as reflected in the Model Penal Code, is to
limit battery to instances of physical injury . . . .  This is the prevailing view in
those jurisdictions with new criminal codes, as reflected in the use of such
statutory terms as . . . 'force or violence upon the person.'"  2 WAYNE R.
LAFAVE, SUBSTANTIVE CRIMINAL LAW § 16.2(a) (2d ed. 2007).  *See, e.g.*, UTAH
CODE ANN.  § 76-5-102(1)(c) ("an act, committed with unlawful force or
violence, that causes bodily injury to another or creates a substantial risk of
bodily injury to another").

it does not entail "use of physical force" in anything other than an exceedingly technical and scientific way. Similarly, "indirect" contact such as throwing "a snowball, spitball, or paper airplane," or water at one's spouse or domestic partner, without causing harm or injury, could be considered rude or insolent touching under the Wyoming statute.[3] *See Flores*, 350 F.3d at 669. We doubt this kind of contact was the type of crime of "domestic violence" that Congress had in mind when it passed § 922(g)(9).

Indeed, during the debate of the bill that later became 18 U.S.C. § 922(g)(9), one of the sponsoring senators referred repeatedly to "wife beaters" and "child abusers," and also to "people who engage in *serious* spousal or child abuse," "those who commit family *violence*," and "people who show they cannot control themselves *and are prone to fits of violent rage*," suggesting that the concern was with violent individuals rather than those who have merely touched their spouse or child in a rude manner. 142 Cong. Rec. S8831-06 (1996) (emphasis added); *see also* 142 Cong. Rec. S11226-01; 142 Cong. Rec. S9458-03.

Additionally, the legislative history as a whole reveals *why* Congress added §922(g)(9) to the overall statute. In a speech on the Senate Floor, Senator Lautenberg explained:

---

[3]Contrary to what the dissent claims, our view is not that "physical force only occurs when some sort of injury or harm arises." Dissent at 1. Instead, we conclude only that WYO. STAT. ANN. § 6-2-501(b) encompasses *de minimis* physical touches that do not necessarily involve the level of "physical force" contemplated by Congress when it passed § 922(g)(9). *See* section C., *infra*.

Under current Federal law, it is illegal for persons convicted of felonies to possess firearms. Yet many people who engage in serious spousal or child abuse ultimately are not charged with or convicted with felonies. At the end of the day, due to outdated thinking, or perhaps after a plea bargain, they are – at most – convicted of a misdemeanor. In fact . . . most of those who commit family violence are never even prosecuted. When they are, one-third of the cases that would be considered felonies if committed by strangers are, instead, filed as misdemeanors. The fact is, in many places today, domestic violence is not taken as seriously as other forms of criminal behavior. Often, acts of serious spouse abuse are not even considered felonies.

142 Cong. Rec. S8831-06 (1996). Later in that speech, Senator Lautenberg stated:

2,000 American children are killed each year from abuse inflicted by a parent or a caretaker. Yet, as I said before, many of these abusers and batterers are prosecuted only for misdemeanors, and under Federal law they are still free to possess firearms. *This amendment closes this dangerous loophole and keeps guns away from violent individuals who threaten their own families*, people who show they cannot control themselves and are prone to fits of violent rage, directed, unbelievably enough, against their own loved ones.

*Id.* (emphasis added); *see also* 142 Cong. Rec. S11872-03, 11877 (giving the example of a man who "beat his wife brutally and was prosecuted, but like most wife beaters, he pleaded down to a misdemeanor and got away with a slap on the wrist"). These comments make clear that Congress broadened the scope of § 922(g) to encompass misdemeanor crimes of domestic violence not out of a hope to keep guns out of the hands of individuals who may have inflicted *de minimis* touches on their spouses or children, but to keep guns out of the hands of domestic abusers who previously fell outside the bounds of the statute because

-12-

they were convicted of misdemeanors rather than felonies due to "outdated thinking" or plea bargains.

The only other circuit to consider the identical Wyoming statute has reached the same conclusion.  In *Belless*, 338 F.3d at 1063, the Ninth Circuit held:

> [T]he Wyoming law against rude touchings does not meet the requirements for the federal statute that defines the predicate offense for a felony firearm conviction: 'the use or attempted use of physical force, or the threatened use of a deadly weapon.'  That category does not include mere impolite behavior.  More inclusive battery statutes such as Wyoming's may be drafted to embrace conduct that too often leads to the more serious violence necessary as a predicate for the federal statute, but they are not limited to it, so cannot supply the necessary predicate.  The phrase 'physical force' in the federal definition of 18 U.S.C. § 921(a)(33)(A)(ii) means the violent use of force against the body of another individual.

*Id.* at 1068.  The court explained its reasoning as follows:

> The traditional doctrine of *noscitur a sociis*, that "the meaning of doubtful words may be determined by reference to associated words and phrases," guides us in our inquiry.  In the federal definition, the associated phrase is "threatened use of a deadly weapon." That is a gravely serious threat to apply to physical force.  By contrast, the Wyoming statute criminalizes conduct that is minimally forcible, though ungentlemanly . . . . It may well be Wyoming's purpose to enable police to arrest people in such confrontations in order to avoid the risk that rude touchings will escalate into violence.

*Id.* at 1068-69.

The Eleventh Circuit reached a different conclusion upon consideration of Georgia's battery statute.  In *United States v. Griffith*, 455 F.3d 1339, 1342 (11th Cir. 2006), the court concluded that "under the plain meaning rule, the 'physical

-13-

contact of an insulting or provoking nature' made illegal by the Georgia battery statute satisfied the 'physical force' requirement of § 921(a)(33)(A)(ii), which is defined in § 921(g)(9)." The court explained that "[a] person cannot make physical contact – particularly of an insulting or provoking nature – with another without exerting some level of physical force." *Id.* The First and Eighth Circuits have reached similar conclusions. *See United States v. Nason*, 269 F.3d 10, 20 (1st Cir. 2001) ("[Offensive physical contacts] invariably emanate from the application of some quantum of physical force, that is, physical pressure against a victim."); *United States v. Smith*, 171 F.3d 617, 621, n.2 (8th Cir. 1999) ("[Insulting or offensive contact], by necessity, requires physical force to complete."). While these circuits may be correct from a scientific perspective, we agree with the Seventh Circuit that such a conception of physical force "collaps[es] the distinction between violent and non-violent offenses." *Flores*, 350 F.3d at 672. As the Court in *Leocal* and our cases discussed above have indicated, "physical force" in a "crime of violence," must, from a legal perspective, entail more than mere contact. Otherwise, *de minimis* touchings could give federal statutes, like § 922(g)(9), an overly broad scope and impact. *See id.*

Accordingly, we hold that in the context presented here Wyoming's battery statute, WYO. STAT. ANN. § 6-2-501(b), does not satisfy the "use of physical force" element of § 921(a)(33)(A)(ii)'s definition of a misdemeanor crime of

domestic violence.  As such, Mr. Hays' underlying conviction pursuant to the

Wyoming statute did not support his conviction.

     **REVERSED**.

**United States v. Hays, No. 07-8039**

**EBEL**, Circuit Judge, Dissenting.


Simply put, this case calls on us to consider whether an individual has necessarily been deemed to have used or attempted to use "physical force" for purposes of 18 U.S.C. § 921(a)(33)(A) when he has been convicted of a misdemeanor crime of domestic violence for "touch[ing] another in a rude, insolent or angry manner."[1] Apparently based on the premise that physical force only occurs when some sort of injury or harm arises, the majority concludes that a rude, insolent, or angry touch does not necessarily involve physical force. I disagree and therefore respectfully dissent. In my opinion, the majority's conclusion is not supported by the plain language of the statute, is not supported by the overall statutory scheme, and is not supported by wise policy.

---

[1] Mr. Hays failed to raise below the argument that the second prong of Wyo. Stat. § 6-2-501(b) (criminalizing "intentionally, knowingly or recklessly caus[ing] bodily injury to another") does not necessarily involve the use of physical force. As such, we may only review this argument for plain error; I do not believe that Mr. Hays has met his burden under the plain error standard. First, the case that Mr. Hays relies on in making his plain error argument, United States v. Perez-Vargas, 414 F.3d 1282 (10th Cir. 2005), neither involved Wyoming law nor section 921(a)(33)(A). Second, Mr. Hays failed to establish that his conviction did not involve the use of force (in fact the PSR suggests otherwise), and therefore failed to meet his burden in establishing a miscarriage of justice.

## I.  Plain Language

"When interpreting the language of a statute, the starting point is always the language of the statute itself.  If the language is clear and unambiguous, the plain meaning of the statute controls."  McGraw v. Barnhart, 450 F.3d 493, 498 (10th Cir. 2006) (quotations omitted).  Black's Law Dictionary defines "force" as "[p]ower, violence, or pressure directed against a person or thing."  BLACK'S LAW DICTIONARY (8th ed. 2004).  The term "physical" is not defined in Black's, but is defined elsewhere as "[o]f or relating to the body as distinguished from the mind or spirit."  AMERICAN HERITAGE DICTIONARY (4th ed. 2006).  Thus, the term "physical force," may be understood to involve the infliction of power, violence, or pressure against a person's body.

We compare that definition to the Wyoming misdemeanor domestic violence statute that criminalizes touching that is rude, insolent, or angry.  The term "touch," by itself, could include any incidental contact between two persons.  The American Heritage Dictionary defines "touch" as "[t]o cause or permit a part of the body, especially the hand or fingers, to come in contact with so as to feel."  Id.  However, Wyoming does not use the word "touch" by itself.  It criminalizes as a misdemeanor domestic violence offense only touching that is "rude, insolent or angry."  Those kinds of touches are not incidental, but are deliberate and aggressive – the very kind of physical force that Congress intended to cover in section 921(a)(33)(A).

While the majority appears to agree that the foregoing is correct from a "scientific perspective," it nevertheless believes that something more is required from a "legal perspective." To this end, the majority relies on Leocal v. Ashcroft, 543 U.S. 1 (2004). I believe the majority's reliance is misplaced.

In Leocal, the defendant had been previously convicted under a Florida statute that made "it a third-degree felony for a person to operate a vehicle while under the influence and, 'by reason of such operation, caus[e] ... [s]erious bodily injury to another.'" 543 U.S. at 7 (quoting Florida Stat. § 316.193(3)(c)(2)) (alterations in original). The Court was asked to consider whether the defendant's conviction in this regard was a "crime of violence" for purposes of 18 U.S.C. § 16, and therefore an aggravated felony for purposes of removability under the Immigration and Nationality Act (INA). 18 U.S.C. § 16 defines a crime of violence as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

In concluding that the defendant's Florida conviction did not fall within the ambit of this statutory language, the Court relied in large part on the notion that the Florida statute lacked a mens rea requirement, while the term "use" in 18

U.S.C. § 16(a) "suggest[ed] a higher degree of intent than negligent or merely accidental conduct." Leocal, 543 U.S. at 9.

Wyo. Stat. Ann. § 6-2-501(b) does have a mens rea requirement, however, making Leocal inapposite to the case at hand. In Streitmatter v. State, 981 P.2d 921, 924 (Wyo. 1999), the Wyoming Supreme Court indicated that "[i]t is clear that Wyo. Stat. Ann. §§ 6-2-501 and 6-2-502 ..., simple assault and battery and aggravated assault and battery, are the statutory equivalents of a crime at common law." As such, the court had no hesitancy in concluding that "Wyo. Stat. Ann. § 6-2-502(a)(iii)[2] is a general intent crime" and would no doubt reach the same conclusion in relation to § 6-2-501. Id. at 924 (footnote and emphasis added). Importantly, general intent crimes require "the intentional doing of the prohibited act itself...." Id. (emphasis added) (quoting 22 C.J.S. Criminal Law, § 30, p. 105). Thus, an individual may not violate § 6-2-501 by engaging in the type of "negligent or merely accidental conduct" that was at issue in Leocal.

The majority also appears to place great weight on the Court's statement in Leocal that it could not "forget that [it was] ultimately ... determining the

---

[2] Wyo. Stat. Ann. § 6-2-502(a)(iii) provides that

> (a) A person is guilty of aggravated assault and battery if he:
> ...
> (iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another....

meaning of the term 'crime of violence.'" 543 U.S. at 11. In this regard, the majority asserts that it is significant for our purposes that the <u>Leocal</u> Court went on to assert, "[t]he ordinary meaning of this term, combined with § 16's emphasis on the use of physical force against another person ... suggests a category of <u>violent, active crimes</u> that cannot be said naturally to include DUI offenses." <u>Id.</u> (emphasis added).

This language, however, is not on point for purposes of the case at hand. Unlike the <u>Leocal</u> Court, we are not being asked to ultimately consider the meaning of the term "crime of violence." Instead, we are being asked ultimately to consider the meaning of the term "<u>misdemeanor</u> crime of domestic violence." The majority gives no weight to the <u>misdemeanor</u> qualifier that is central to this case. A misdemeanor crime will undoubtedly involve less violence than a felony; that is why it is a misdemeanor. We must also remain mindful that Congress' concern was "domestic" violence, where a victim may often be disproportionately vulnerable and where the range of force that may be used could take an almost infinite number of forms.

Finally, it is critical to remember that Wyo. Stat. Ann. § 6-2-501(b) criminalizes only rude, insolent, and angry touching; not mere touching. Such

- 5 -

conduct is by no means de minimis, but instead, is the type that may readily lead

to an escalation of violence.[3]

It is presumably for these reasons that Congress used the broad phrase

"physical force" unadorned or restricted by limiting qualifiers such as "violent"

or "substantial" or "likely to cause injury" or "having the potential to cause

injury" or "offensive" or any of the other myriad qualifiers that may now come

into play as a result of the majority's divergence from the simple statutory

language. In plain English, a rude, insolent, or angry touch in a domestic context

necessarily involves a "use of physical force." Congress did not choose to limit

the phrase "physical force," and accordingly, neither should we.

## II. Overall Statutory Scheme

As explained in the previous section, the plain language of section

921(a)(33)(A) does not require any sort of injury to occur before a predicate

offense may arise. This point is bolstered by an examination of the overall

statutory scheme. 18 U.S.C. § 922(g)(8)(C)(ii) criminalizes the possession of

firearms by individuals who are subject to certain court orders. Specifically,

section 922(g)(8)(C)(ii) applies to an individual who is subject to a court order

---

[3] One must keep in mind that section 18 U.S.C. § 922(g)(9) may only be invoked if there has been a previous <u>conviction</u> for misdemeanor domestic violence. The requirement of a prior conviction should be an adequate safeguard to ensure section 922(g)(9) is not invoked frivolously, as only incidents that were sufficiently severe to require police intervention and ultimately support a criminal prosecution and conviction will give rise to the enhancement.

that "by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury...." (Emphasis added.) Thus, section 922(g)(8)(C)(ii) is explicitly limited to "physical force" "that would be reasonably expected to cause bodily injury." Section 921(a)(33)(A), of course, carries no such qualifier. Nevertheless, the majority concludes that it ought to judicially add such a restriction to section 921(a)(33)(A). This is unwarranted.

"It is well settled that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Duncan v. Walker, 533 U.S. 167, 173 (2001) (alteration, quotations omitted). The majority offers no explanation for Congress' failure to limit "physical force" as used in section 921(a)(33)(A) to acts "that would reasonably be expected to cause bodily injury." Instead, the majority's opinion essentially serves to graft this language onto section 921(a)(33)(A) itself, and thereby does substantial harm to the presumption that Congress intentionally and purposely sought to do otherwise. This is imprudent, as section 922(g)(8)(C)(ii) clearly establishes that Congress had the wherewithal to add an "expected to cause bodily injury" qualifier had it wished to do so.

### III. Policy

As a final matter, it seems to me that the majority's opinion is unwise from a policy perspective. It imposes an amorphous legal standard to determine whether conduct involving "physical force" rises to the level of a predicate offense for purposes of section 922(g)(9). The majority apparently requires that physical force result in some sort of "harm or injury." But, how much and of what kind? Is a scratch sufficient? What if glasses are knocked off the victim's face and broken, but the victim sustains no physical marks from the assault? How about an emotional injury? Once we start down the slippery slope left open by the majority opinion of qualifying what constitutes "physical force," our work will never be done.[4]

---

[4] Indeed, although the majority cites several other circuits' precedent as support for its opinion, it appears there is now a three-way circuit split with respect to the general issue presented by this case. The opinions of the First, Eighth, and Eleventh circuits are in accord with my view that the plain language of the statute ought to control. See United States v. Griffith, 455 F.3d 1339, 1342 (11th Cir. 2006) (asserting that "[a] person cannot make physical contact–particularly of an insulting or provoking nature–with another without exerting some level of physical force"), cert. denied, 127 S. Ct. 2028 (2007); United States v. Nason, 269 F.3d 10, 20 (1st Cir. 2001) (asserting that "offensive physical contacts with another person's body categorically involve the use of physical force (and, hence, qualify as misdemeanor crimes of domestic violence under section 922(g)(9) if perpetrated against domestic partners)"); United States v. Smith, 171 F.3d 617, 621 n.2 (8th Cir. 1999) (asserting that "insulting or offensive" ... "physical contact, by necessity, requires physical force to complete."). Meanwhile, the Seventh and Ninth circuits have adopted standards under which physical force must be "violent." See United States v. Belless, 338 F.3d 1063, 1068 (9th Cir. 2003) (asserting "[t]he phrase 'physical force' in the federal definition at 18 U.S.C. § 921(a)(33)(A)(ii) means the violent use of force against the body of another individual" (emphasis added)); Flores v. Ashcroft, 350 F.3d 666, 669, 672 (7th Cir. 2003) (although not precisely on point, asserting

(continued...)

I expect that Congress itself appreciated these difficulties, and therefore adopted the simple, more easily applied standard that is reflected in the statute's plain language. Based on section 921(a)(33)(A), an enhancement under section 922(g)(9) is appropriate whenever (1) in a domestic context, (2) the defendant has used physical force against another, (3) resulting in a conviction of a state misdemeanor for domestic violence. Unlike the amorphous standard engrafted onto the statute by the majority, the standard chosen by Congress can be easily applied. And of course, in the unlikely event that in a particularly unusual case the straightforward congressional standard is inequitable and represents a departure from the heartland context of section 922(g)(9), the sentencing court is always free to consider a variance. Thus, I believe the effort of the majority to improve upon the statute as drafted is neither necessary nor beneficial.

---

[4](...continued)
that a conviction for "touching in a rude, insolent, or angry manner" was not a crime of domestic violence for purposes of removability under the INA because it did not require "violent" force). Finally, as a third alternative, the majority evidently adopts the standard that "physical force" only arises when it causes "harm or injury." This suggests a need for the Supreme Court to intervene to resolve this split.